The FEDERAL LAND BANK OF ST. PAUL, a corporation, Plaintiff and Appellee,

v.

The STATE of North Dakota, and Byron L. Dorgan, as State Tax Commissioner of the State of North Dakota, Defendants and Appellants.

Civ. No. 9543.

Supreme Court of North Dakota.

Jan. 22, 1979.

Pearce, Anderson, Thames & Durick, Bismarck, for plaintiff and appellee; argued by Wm. P. Pearce, Bismarck.

Kenneth M. Jakes and Robert W. Wirtz, Sp. Asst. Attys. Gen., State Tax Dept., Bismarck, for defendants and appellants; argued by Kenneth M. Jakes, Bismarck.

PEDERSON, Justice.

The Federal Land Bank of St. Paul brought this action for a declaratory judgment pursuant to Chapter 32–23, NDCC (see Rule 57, NDRCivP), seeking to have royalty interests in produced oil and gas owned by the Bank declared exempt from the "gross production tax" imposed pursuant to Chapter 57–51, NDCC. No dispute of facts was raised and the trial court determined on a Rule 12, NDRCivP, motion on the pleadings that, because the gross production tax is not a tax upon real estate, the Bank is exempt from that tax. The judgment entered pursuant to that determination and an order denying new trial were appealed by the State and the tax commissioner. We have given the case a special priority in order that the present Legislative Assembly may have an opportunity to make its intent more definite. We acknowledge that the issue is close, but conclude that the State has not carried the burden of proving that the constitutional immunity [1] from taxation has been waived by Act of Congress and by the action of the North Dakota Legislative Assembly. The judgment and order denying the motion for new trial are affirmed.

---

1. We do not overlook the immunity of the United States from state tax powers under the supremacy doctrine. See *Northern Securities Co. v. United States,* 193 U.S. 197, 24 S.Ct. 436, 48 L.Ed. 679 (1903); *Osborn v. Bank of United States,* 9 Wheat (U.S.) 738, 6 L.Ed. 204 (1824), and *McCulloch v. Maryland,* 4 Wheat (U.S.) 316, 4 L.Ed. 579 (1819).

Section 176 of the North Dakota Constitution provides in part:

"The property of the United States . . shall be exempt from taxation."

It is conceded that the Bank is an instrumentality of the United States and is thus immune from taxation, except insofar as the immunity may have been waived by Congress.[2] If there is a waiver, it is found in 12 U.S.C. § 2055, which provides in part:

"Every Federal land bank and every Federal land bank association and the capital, reserves, and surplus thereof, and the income derived therefrom shall be exempt from Federal, State, municipal, and local taxation, *except taxes on real estate* held by a Federal land bank or a Federal land bank association to the same extent, *according to its value,* as other similar property held by other persons is taxed." [Emphasis supplied.]

It is the argument of the State that the North Dakota oil and gas gross production tax imposed by Chapter 57–51, NDCC, is a state tax on real estate that is measured according to the total value of the producing real estate by applying the gross production tax rate of 5% to the value of the oil and gas produced from the real estate and that, therefore, 12 U.S.C. § 2055 waives the exemption of the Bank from payment of the tax.

The State's position is supported by the argument that the 1953 Legislature, in enacting Chapter 57–51, NDCC, modeled it after the Oklahoma gross production law which had been construed by the Supreme Courts of Oklahoma and of the United States as a tax on real estate, and provided in the title of the Act that it was a tax on oil and gas "properties." Because the North Dakota Constitution prohibits exempting land (mineral estates) from every and all real estate taxation, it is contended that this must be a tax on real estate.

Although there are significant differences in the statutes, there is logic to the State's argument that North Dakota mod-

eled its gross production tax law after that of Oklahoma. We encounter some difficulty, however, in concluding that the contemporaneous constructions placed upon the Oklahoma statute settle for us the question we must resolve in this case. In *State v. Indian Royalty Co.,* 177 Okl. 238, 58 P.2d 601 (1936), relied upon by the State, we find no definite language indicating that produced minerals were considered real estate even though those minerals were labeled "property." We do not agree that *Carpenter v. Shaw,* 280 U.S. 363, 50 S.Ct. 121, 74 L.Ed. 478 (1930), can provide a persuasive precedent that we should apply here. The Oklahoma court had ruled, in the *Carpenter* case, that "the tax is imposed only on the oil and gas when severed from the land, and so is a tax upon personalty . . . ." In reversing that decision, the United States Supreme Court said:

"While, in general, tax exemptions are not to be presumed and statutes conferring them are to be strictly construed [cite omitted], the contrary is the rule to be applied to tax exemptions secured to the Indians by agreement between them and the national government." *Carpenter v. Shaw,* 280 U.S. at 366, 50 S.Ct. at 122, 74 L.Ed. at 481, *supra.*

■ Because we do not have the impelling need to construe doubtful expressions in favor of either party to this suit, we conclude that it would be inappropriate to accept the conclusion in *Carpenter v. Shaw, supra*—that a tax on severed minerals is a tax on real estate. The presumption is still valid that when we adopt a statute from another jurisdiction, we adopt the contemporaneous construction of its provisions by the courts of that jurisdiction. *Hermanson v. Morrell,* 252 N.W.2d 884 (N.D.1977). But we will not apply the interpretation of another jurisdiction which is based upon factors not present here.

■ Ordinarily, the burden is on a claimant of tax exemption to establish the

---

2. See *Federal Land Bank v. Bismarck Lumber Co.,* 314 U.S. 95, 62 S.Ct. 1, 86 L.Ed. 65 (1941), and the Annotation in 7 L.Ed.2d 884.

exempt status of his property. *Lutheran Camp. Coun. v. Board of Co. Com'rs, Ward Co.,* 174 N.W.2d 362 (N.D.1970). We believe that the Bank has borne that burden by showing the breadth of the constitutional exemption granted to the United States by § 176 of the North Dakota Constitution. The burden of showing that the exempt status under the Constitution has been waived by the provisions of 12 U.S.C. § 2055 is upon the State. Waivers are never presumed, but ordinarily must be established with certainty. See 31 C.J.S. Estoppel § 162b.

■ The second point raised by the State relates to the provision in the title of Chapter 339, S.L. 1953 (now Chapter 57–51, NDCC), which stated that it was a "tax on producing oil and gas properties." The problem with that contention is that, even if it were fully accepted, it does not dispose of the issue before us. The word "property" is defined in § 1–01–49(5), NDCC, to include both real estate and personal property. When we apply the general statutory provisions governing property classifications found in Chapter 47–01, NDCC, we are led to conclude that "produced" or "severed" minerals are personal property, not real estate.

Finally, we need to comment upon the State's use of what can be called a bootstrap argument—that the tax imposed by Chapter 57–51 must be a tax upon real estate because the Legislature does not have authority to exempt real estate from all types of real estate taxation. The State apparently overlooks the fact that § 176 of the North Dakota Constitution provides the exemption for real estate owned by the United States and that, insofar as other owners of mineral estate are concerned, the Legislature has provided for a general property tax thereon. See §§ 57–02–24 and 57–02–25, NDCC.

In view of the above conclusions we deem it unnecessary that we discuss other questions briefed and argued in this case.

"Questions, the answers to which are not necessary to the determination of a case, need not be considered." *Hospital Services v. Brooks,* 229 N.W.2d 69, 71 (N.D.1975).

We affirm the judgment and the order denying a new trial. Because of the public interest involved, costs are not allowed to any party.

ERICKSTAD, C. J., PAULSON and SAND, JJ., and NORBERT J. MUGGLI, District Judge, concur.

MUGGLI, District Judge, sitting in place of VANDE WALLE, J., disqualified.