**ST. ALEXIUS HOSPITAL, a Nonprofit Corporation, Plaintiff and Appellee,**

v.

**Richard ECKERT, Defendant, Third-Party Plaintiff, and Appellee,**

v.

**BLUE CROSS OF NORTH DAKOTA, Third-Party Defendant, Third-Party Plaintiff, and Appellant,**

v.

**MILBANK MUTUAL INSURANCE COMPANY, a Foreign Corporation, Third-Party Defendant and Appellee.**

Civ. No. 9638.

Supreme Court of North Dakota.

Oct. 11, 1979.

Myron H. Atkinson, Jr., Bismarck, for plaintiff and appellee St. Alexius Hospital; no appearance.

Charles L. Chapman, of Chapman & Chapman, Bismarck, for defendant, third-party plaintiff, and appellee Richard Eckert.

Stephen W. Plambeck for Timothy Q. Davies and Sarah Andrews Herman, of Nilles, Hansen, Selbo, Magill & Davies, Fargo, for third-party defendant as to Eckert, third-party plaintiff as to Milbank Mutual Insurance Company, and appellant Blue Cross of North Dakota.

B. Timothy Durick, of Pearce, Anderson, Thames & Durick, Bismarck, for third-party defendant and appellee Milbank Mutual Insurance Company.

VANDE WALLE, Justice.

Blue Cross of North Dakota appeals from a judgment of the Burleigh County district court entered February 26, 1979, on behalf of St. Alexius Hospital [hereinafter "Hospital"], Richard Eckert, and Milbank Mutual Insurance Company [hereinafter "Milbank"]. We affirm.

The facts of this case are not in dispute. The district court made its determination, without a jury, based upon a stipulation of facts entered into by the parties.

Eckert was involved in an automobile accident in Bismarck, North Dakota, on April 10, 1976, and was hospitalized. At the time of the accident Eckert was insured by Milbank under an automobile insurance policy providing "basic no-fault benefits" within the meaning of Chapter 26–41, N.D.C.C., the North Dakota Auto Accident Repara-

tions Act. Eckert also had a hospital-service contract with Blue Cross. This contract contained a coordination-of-benefits provision authorized by Section 26–41–10(3), N.D.C.C.

Eckert directed Milbank to pay no-fault benefits to him for work loss. Since the time of the accident Milbank has paid Eckert a total of $12,900 in work-loss benefits and $328 in medical-expense benefits out of the $15,000 maximum available under his policy. In July of 1976, after Milbank had begun paying Eckert for his wage loss, the Hospital submitted a bill for medical services to Eckert and Milbank. Although Eckert did not request or authorize payment by Milbank, Milbank issued a check payable to Eckert and the Hospital for $11,871 and forwarded it to Eckert. The check was returned to Milbank by Eckert with instructions to withhold payment of the hospital bill and to continue payments for loss of income under Eckert's no-fault policy.

The Hospital sued Eckert for the hospital bill, whereupon Eckert served Blue Cross with a third-party complaint asking that any judgment rendered against Eckert be deemed a judgment against Blue Cross. A third-party complaint was then brought by Blue Cross against Milbank for a declaration that Milbank was liable under the terms of its contract with Eckert for the hospital bill alleged in the complaint and Eckert's third-party complaint to the extent of the no-fault coverage provided thereunder, and for indemnity from Milbank for any amounts Blue Cross was required to pay Eckert by failure of Milbank to make payment.

The district court granted the Hospital judgment against Eckert for $11,871, plus interest, and granted Eckert judgment against Blue Cross on the basis of his third-party complaint for the same amount. The court further held that Blue Cross failed to state a cause of action against Milbank and granted Milbank a judgment of dismissal with prejudice. Blue Cross has appealed the judgment for Eckert and the dismissal of its third-party complaint against Milbank.

The main issue on this appeal centers on whether a person injured in an automobile accident may require that his no-fault benefits be applied to wage loss and allocate his medical expenses to medical insurance coverage where the person's total economic loss exceeds his no-fault insurance policy limits.

■ Blue Cross contends that Milbank has primary responsibility for payment of the hospital bill. It is true that under Section 26–41–03(5), N.D.C.C., medical expenses are considered an economic loss, and that Section 26–41–10(1), N.D.C.C., states that a no-fault insurer shall have the primary obligation to make payment for economic loss. But this does not mean that Milbank has the sole responsibility for these expenses when the total economic loss exceeds the no-fault policy limits. At the time the Hospital presented its claim for medical expenses in July of 1976, Milbank was already paying Eckert for his wage loss under Section 26–41–03(5), N.D.C.C., and Eckert instructed Milbank not to pay the claim for medical expenses. The Act does not state that medical expenses shall have priority over any other form of economic loss.

■ Section 26–41–09, N.D.C.C.,[1] is raised by Blue Cross to show that Milbank was required to have made payment within thirty days after receipt of reasonable proof of the medical bill. But Blue Cross seems to be construing this section for the benefit of secondary insurers. It is clear that this statute is intended for the benefit of the insured, to assure him timely payment upon his economic loss. Nor was Milbank in violation of the Act by paying Eckert directly. Section 26–41–09, N.D.C.C., provides that the no-fault insurer may at its option pay either the insured or the organization rendering services for which benefits are payable so long as the insurer acts in good faith. Milbank did act in good faith when it paid Eckert instead of the Hospital.

It is further asserted by Blue Cross that because of a coordination-of-benefits clause in its contract with Eckert, it bears no responsibility for the medical expenses. This clause in the contract states:

## "ARTICLE XI

## "NO–FAULT AUTOMOBILE COVERAGE

"If a member is eligible for benefits under 'no-fault' coverage as a result of accidental bodily injury incurred on or after the effective date of this Contract, and

---

1. Section 26–41–09, N.D.C.C., provides:

"Payment of basic and optional excess no-fault benefits.—

"1. Basic and optional excess no-fault benefits are payable monthly for economic loss sustained by an injured person or his dependent survivors or incurred on his behalf by his spouse, relatives, or guardian. A basic no-fault insurer may pay basic or optional excess no-fault benefits when due to any of the above persons whom [sic] it believes has [sic] sustained or incurred the economic loss or at its option to the person or organization rendering, for a charge, the services for which such benefits are payable. In the event the injured person dies, a basic no-fault insurer may pay the benefits due directly to those entitled thereto without the appointment of an administrator or executor and unless a court directs otherwise, may pay all benefits for survivors['] income loss or replacement services loss to the surviving spouse for the use and benefits [sic] of all dependent survivors. A basic no-fault insurer's payments made in good faith in accordance with the provisions of this chapter shall

discharge its liability to the extent of such payments unless the basic no-fault insurer has been notified in writing of the claim of some other person prior to the making of any such payment.

"2. Basic and optional excess no-fault benefits are overdue if not paid within thirty days after the basic no-fault insurer receives reasonable proof of the fact and the amount of loss sustained, except that it may accumulate claims for periods not exceeding one month, and the benefits are not overdue if paid within twenty days after the period of accumulation. If reasonable proof is not supplied as to the entire claim, the amount supported by reasonable proof is overdue if not paid within thirty days after such proof is received by the basic no-fault insurer. Any part or all of the remainder of the claim that is later supported by reasonable proof is overdue if not paid within thirty days after such proof is received by the basic no-fault insurer. Payment is deemed made on the date of mailing. All overdue payments shall bear interest at the rate of eighteen percent per annum."

arising out of the operation or use of a motor vehicle, the benefits under this Contract shall be reduced by the amount of basic benefits payable under said 'no-fault' coverage."

■ Statutory authority for this type of clause is found at Section 26–41–10(3), N.D. C.C., which at the time this action arose provided:

"3. Any insurer or nonprofit service corporation, other than a basic no-fault insurer, authorized to do business in this state may coordinate any benefits it is obligated to pay for economic loss incurred as a result of accidental bodily injury, with basic no-fault benefits. Any such insurer or nonprofit service corporation may not coordinate benefits unless it provides those persons who purchase benefits from it with an equitable reduction or savings in the direct or indirect cost of purchased benefits. Any such coordination of benefits plan shall be approved by the commissioner of insurance."[2]

■ Blue Cross contends that the coordination-of-benefits provision found in Section 26–41–10(3), N.D.C.C., means that Blue Cross, as expressed in its policy clause, does not have to pay benefits if the benefits could also be paid by a no-fault insurer. Eckert and Milbank, on the other hand, construe this provision to mean that Blue Cross does not have to pay if benefits have already been paid by a no-fault insurer. Thus, they contend, the insured may direct the payment of his insurance benefits when his economic loss is greater than his no-fault coverage. Because both constructions of the provision are possible, we conclude that the meaning of "coordination of benefits" is ambiguous. Therefore, we must determine what the legislative intent was in enacting this statute.

As an aid in construing an ambiguous statute, Section 1–02–39, N.D.C.C., states the court may consider, among other things, the object sought to be attained and the consequences of a particular construction.

In determining the object sought to be attained by this statute we must consider the purposes of Chapter 26–41, the Auto Accident Reparations Act. As is stated in Section 26–41–02, N.D.C.C.:

"The legislative assembly declares that its purpose in enacting this chapter is to avoid inadequate compensation to victims of motor vehicle accidents, . . ."

Nothing is said in this Act about protecting secondary insurers from economic loss; the protection is for the insured. The Act's stated purpose is to provide adequate compensation for the insured person. The object of this "coordination of benefits" statute is not to limit the insured's right to recover for actual economic losses incurred.

2. This section has since been amended to read: "3. Any insurer or nonprofit service corporation, other than a basic no-fault insurer, authorized to do business in this state may coordinate any benefits it is obligated to pay for economic loss incurred as a result of accidental bodily injury, with *the first five thousand dollars of* basic no-fault benefits. Any such insurer or nonprofit service corporation may not coordinate benefits unless it provides those persons who purchase benefits from it with an equitable reduction or savings in the direct or indirect cost of purchased benefits. Any such coordination of benefits plan shall be approved by the commissioner of insurance." [Italicized portion added by amendment.] 1977 N.D.Sess.Laws, Ch. 253, Sec. 1.

Thus a person suffering economic loss because of an automobile accident occurring after the effective date of the 1977 amendment will be required to collect the first five thousand dollars of economic-loss benefits from his no-fault insurer before making claim on an additional insurer.

The minutes of the House and Senate Committees on Industry, Business, and Labor, which considered HB 1510 amending Section 26–41–10, subsec. 3, N.D.C.C., indicate that at least some of the witnesses and committee members were under the impression that the coordination-of-benefits provision required a person suffering economic loss to collect benefits from his no-fault insurer before making claim on an additional insurer. This does not in any way indicate the correct construction of the statute. The action of the 1977 Legislative Assembly cannot be taken as proof of what the 1975 Assembly intended when it passed the original Auto Accident Reparations Act. *St. Vincent's Nursing Home v. Department of Labor*, 169 N.W.2d 456 (N.D.1969).

The consequences of accepting Blue Cross's construction of the "coordination of benefits" clause in cases where the total economic loss exceeds the limits of an insured's no-fault policy is that the injured party may be forced to exhaust his total no-fault benefits on medical bills before obtaining relief for other economic losses— which in effect would give medical expenses priority over other types of economic losses. If the construction put forward by Eckert and Milbank in cases where economic losses exceed no-fault benefits is accepted, the medical expenses may be allocated to the medical insurer and the no-fault benefits may be used for other economic losses.

Another relevant rule of statutory construction, found in Section 1–02–38(3), N.D. C.C., states:

"In enacting a statute, it is presumed that:

.    .    .    .    .

"3. A just and reasonable result is intended."

The "coordination of benefits" statute may be construed so as to prevent duplication of payments but not the allocation of losses among different insurers in those situations where the total economic loss exceeds no-fault benefits. This is the more just and reasonable result. The insured is the one who has paid premiums, and he should be allowed to take advantage of the coverage he paid for and be able to stack or allocate his insurance policies to meet his needs.

The Minnesota Supreme Court recently faced a similar situation in the case of *Wasche v. Milbank Mut. Ins. Co.*, 268 N.W.2d 913 (Minn.1978). There, the court, in the absence of a clear legislative prohibition against stacking,[3] allowed an injured person to recover basic economic-loss benefits under each no-fault policy applicable to the extent of actual losses up to the stacked policy limits. North Dakota, like Minnesota, has no law clearly prohibiting such stacking of insurance policies.

Blue Cross has cited the Oregon case of *Monaco v. United States Fidelity and Guaranty Co.*, 275 Or. 183, 550 P.2d 422 (1976), among others, for showing that a court should not correct clear and unambiguous language for the Legislature so as to better serve what the court felt was, or should have been, the Legislature's intent. We agree with this proposition, but it has little bearing on this case. *Monaco* concerned the attempted recovery by an individual of the policy limits under the personal injury protection clause and the uninsured motorist clause of her auto insurance policy. Oregon has a specific statute clearly preventing the recovery attempted in the *Monaco* case.[4] Section 26–41–10(3), N.D.C.C., concerning "coordinating benefits" is not this clear.

Even in *Monaco,* the Oregon court said that in the absence of this specific statute it might follow the lead of other States and void setoff provisions in insurance policies, on public-policy grounds, where there is no statutory authority for these provisions. 275 Or. at 189, 550 P.2d at 425.

We conclude that the Legislature, in enacting Section 26–41–10(3), N.D.C.C., intended to coordinate benefits in order to prevent double recovery of benefits—not to prevent an insured from allocating his economic losses among his insurers. This con-

---

**3.** In *Wasche, supra,* the Minnesota court stated:

"Should we have misconceived the legislature's intent, we invite a clear expression." 268 N.W.2d at 919.

Should it be that we, too, have misconceived the Legislature's intent, we also invite a clear expression for the future. The North Dakota Legislature may have already attempted to provide a clearer expression in the form of the 1977 amendment to Section 26–41–10(3), N.D. C.C. As previously stated, this amendment is not applicable to the facts in this case.

**4.** At the time of the *Monaco* case, ORS 743.835 provided:

"Payment of any benefit required by ORS 743.800 to or for any insured and any payment required by ORS 743.825 to any health insurer or health care service contractor shall be applied in reduction of the amount of damage that the insured may be entitled to recover from any insurer under bodily liability or uninsured motorist coverage for the same accident."

struction is in line with our holding in *Stetson v. Blue Cross of North Dakota,* 261 N.W.2d 894 (N.D.1978). There, we construed the "coordination of benefits" language in a Blue Cross policy as expressing "a clear intent to prevent an insured member from receiving double coverage for services rendered." 261 N.W.2d at 896.

The fact that the provision in the Blue Cross policy had been approved by the North Dakota Insurance Commissioner does not bind this court as to the validity of the provision. While deference must be given to the construction placed upon a statute by an administrative agency, the final determination of whether this clause conforms to law must be made by this court. See Sands, 2A Sutherland Statutory Construction § 49.05 (4th ed. 1973).

Because Article XI of the Blue Cross policy reduces Blue Cross benefits by the amount of basic no-fault benefits *payable* —not just *paid*—it exceeds the reduction in payments allowed by the coordination-of-benefits provision of Section 26–41–10(3), N.D.C.C., in effect at the time this action arose. As noted by the Michigan Court of Appeals in *Roach v. Central Nat. Ins. Co. of Omaha,* 60 Mich.App. 40, 230 N.W.2d 297 (1975):

> "When the provisions of a policy of insurance differ or vary from this statutory requirement, they must be read into the provisions of the policy." 60 Mich.App. at 47, 230 N.W.2d at 301.

Therefore, the nonconforming language of the policy clause must be impliedly replaced with conforming language stating that Blue Cross benefits are reduced by the amount of basic no-fault benefits paid, not merely payable.

Blue Cross has also appealed the dismissal with prejudice of its third-party complaint against Milbank. We agree with the district court that Blue Cross does not have a direct cause of action against Milbank. Blue Cross was not a party to the contract between Eckert and Milbank, nor is it conceivable that Blue Cross would be a third-party beneficiary. The contract entered into by Eckert and Milbank was drafted to conform to the North Dakota Auto Accident Reparations Act, Chapter 26–41, N.D. C.C., whose stated purpose is, as we have already noted, to "avoid inadequate compensation to victims of motor vehicle accidents, . . ." Nothing is said about benefiting secondary insurers.

Judgment affirmed.

ERICKSTAD, C. J., and PEDERSON, PAULSON and SAND, JJ., concur.