ST. PAUL MERCURY INSURANCE COMPANY, a foreign insurance company, Plaintiff and Appellant,

v.

Conrad W. ANDREWS, Jr., and Eileen Andrews, Defendants and Appellees.

Civ. No. 10151.

Supreme Court of North Dakota.

July 1, 1982.

**484**

Zuger & Bucklin, Bismarck, for plaintiff and appellant; argued by Thomas O. Smith, Bismarck.

Dosland, Dosland & Nordhougen, Moorhead, Minn., for defendants and appellees; argued by Duane A. Lillehaug, Moorhead, Minn.

PEDERSON, Justice.

Is "stacking" prohibited under the mandatory uninsured motorist statute in North Dakota? The trial court said it is not and we agree.

Is "stacking" of basic no-fault benefits prohibited under the North Dakota Auto Accident Reparations Act? The trial court said it is not. We do not agree.

Are provisions in an insurance policy which clearly prohibit "stacking" of uninsured motorist coverage enforceable in this state? We conclude that even though insurance policies are contracts of adhesion and the benefit of all doubts is given to the insured, the policy here leaves no doubt.

The judgment is reversed.

In 1971 the Legislature adopted "Mandatory Uninsured Motorist Coverage" (Ch. 279, S.L.1971—see § 26–02–42, NDCC). This statutory provision prohibited the issuance of any motor vehicle liability insurance policy unless it provided the insured with at least $10,000 personal injury coverage for injuries caused by an uninsured motorist. (The amount of coverage which is governed by § 39–16.1–11, NDCC, has subsequently been raised to $25,000.) Although § 26–02–42, NDCC, required that no liability policy could be issued without uninsured motorist coverage, there was, at that time, no mandatory requirement for liability insurance. This changed in 1975, however, when the Legislature made it compulsory that liability coverage be in effect before any vehicle be driven in this state (Ch. 340, S.L.1975—see § 39–08–20, NDCC).

Also, in 1975 (Ch. 265, S.L.1975—see Ch. 26–41, NDCC), the Legislature enacted the North Dakota version of mandatory no-fault insurance. One of its provisions (§ 26–41–07, NDCC) made "basic no-fault benefits" payable to the owner of the motor vehicle or to any relative residing in the same household (§ 26–41–03(14), NDCC).

In 1976, St. Paul issued an insurance policy to Conrad Andrews covering his 1976 Honda Hatchback. Andrews paid a premium of $1.00 for uninsured motorist coverage and $26.00 for basic no-fault benefits. In June 1979, St. Paul amended the policy to cover a 1970 Chevrolet Camaro. For this vehicle, Andrews paid a premium of $.90 for uninsured motorist coverage and $24.00 for basic no-fault benefits. His premium for basic no-fault benefits was reduced by $14.00 for the Honda Hatchback. In July 1979 St. Paul again amended the policy to cover a 1979 Honda station wagon. For this vehicle, Andrews paid a premium of $.80 for uninsured motorist coverage and $9.00 for basic no-fault benefits. Because Andrews' daughter, Eileen, was identified as an occasional operator of the 1976 Honda Hatchback, the premium for basic no-fault benefits for that car was increased by $10.00.

The policy, in plain words, limited St. Paul's liability under the uninsured motorist coverage "regardless of the number of covered persons, claims made, vehicles or premiums ... [up to $25,000]" and, under the basic no-fault coverage "regardless of the number of persons insured, policies ..., claims made or insured motor vehicles to which this coverage applies ... [up to $15,000]."

On July 15, 1979, Eileen was injured in a one-car accident. She was a passenger in a

car owned by Randy Johnson and driven by Dale A. Anderson. The car involved in the accident was an uninsured motor vehicle. There was also no insurance applicable to Randy Johnson nor to Dale E. Anderson. Eileen's injuries far exceed the total of the benefits payable, even if coverage is "stacked." The facts in this case are undisputed.

Following the accident, Andrews submitted a claim to St. Paul seeking compensation for her injuries. St. Paul contended that "stacking" was not permitted in North Dakota, and subsequently paid Andrews $15,000 in basic no-fault benefits and $25,000 in uninsured motorist benefits. It is conceded that the benefits in these amounts would have been payable if only one of the Andrews' vehicles had been covered and only one premium paid.

This suit was then commenced by St. Paul, seeking a declaratory judgment to determine the extent of its liability. St. Paul argued that it had complied with the statutory provisions in North Dakota, as well as the terms and conditions of the policy, when it made payments of $25,000 of uninsured motorist benefits and $15,000 of basic no-fault benefits. Andrews argues that Eileen should be compensated also under the remaining two coverages. Andrews contends that Eileen should be able to "stack" the additional two coverages up to the extent of her injuries.

The district court agreed with Andrews and ordered St. Paul to pay an additional $30,000 of basic no-fault benefits and an additional $50,000 of uninsured motorist benefits. St. Paul appealed from the judgment and we reverse.

The question of whether or not "stacking" is prohibited under any North Dakota law is one of first impression in this court, albeit we did indicate approval of "stacking" in an obiter statement in *St. Alexius Hospital v. Eckert*, 284 N.W.2d 441 (N.D. 1979). The subject was also peripherally raised but not analyzed by the federal court in *Hughes v. State Farm Mut. Auto. Ins. Co.*, 604 F.2d 573, 580 (8th Cir. 1979).

■ "When the wording of a statute is clear and free of all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." Section 1–02–05, NDCC. If the statute is ambiguous, we are authorized to consider all pertinent, extrinsic evidence of legislative intent. *See Morton County v. Henke*, 308 N.W.2d 372 (N.D. 1981). Pertinent matters to be considered include:

"1. The object sought to be attained.
"2. The circumstances under which the statute was enacted.
"3. The legislative history.
"4. The common law or former statutory provisions, including laws upon the same or similar subjects.
"5. The consequences of a particular construction.
"6. The administrative construction of the statute.
"7. The preamble." *See* § 1–02–39, NDCC.

■ We will first examine the 1971 statute requiring that every motor vehicle liability policy include uninsured motorist coverage. It is clearly stated therein that no policy shall be delivered or issued for delivery in this state "unless coverage is provided therein or supplemental thereto in amounts not less than that set forth in section 39–16.1–11 . . . ." Section 26–02–42, NDCC. That language is not patently ambiguous and no extrinsic evidence should be necessary to lead to the conclusion that "stacking" is not prohibited thereby.

Assuming, however, that insurance industry custom, other insurance law, or attending circumstances disclose a latent ambiguity, we examine the statute in the light of the canons set forth in § 1–02–39.

■ Neither the stated purpose nor the legislative history is revealing. The circumstances under which the statute was enacted were not described for us. We know that this is not common law nor a uniform state law; however, we are told that nearly all of the states had enacted similar statutes prior to 1971. There is a presumption that when we adopt a statute

from another jurisdiction, we adopt the contemporaneous construction of its provisions by the courts of that jurisdiction. *See Federal Land Bank of St. Paul v. State*, 274 N.W.2d 580, 582 (N.D.1979).

The courts of a number of the states that had enacted mandatory uninsured motorist laws, in words remarkably similar, had, prior to 1971, construed the statute to either permit or prohibit "stacking." A few examples will illustrate the necessity to abolish the presumption referred to in *Federal Land Bank of St. Paul v. State, supra*, insofar as this case is concerned.

In a case sometimes described as the first to consider "stacking" of uninsured motorist coverage, the Supreme Court of Iowa in effect prohibited "stacking." *Burcham v. Farmers Insurance Exchange*, 255 Iowa 69, 121 N.W.2d 500 (1963). Our research leaves it unclear whether the Iowa court was interpreting the statute alone or a "positive policy limitation." There is uncertainty, also, whether or not the "stacking" prohibited was "double recovery," as distinguished from the claim of Eileen Andrews.

Similar results were reached by the Court of Appeals of California in *Allstate Insurance Company v. Schmitka*, 12 Cal.App.3d 59, 90 Cal.Rptr. 399 (1970), in construing the statute, case law, and the policy terms. Likewise, the Court of Appeals of Louisiana barred "stacking" in its interpretation of the statute and interpretations by administrators. *LeBlanc v. Allstate Insurance Company*, 194 So.2d 791 (La.App.1967).

On the other hand, opposite conclusions had been reached, also prior to 1971, by the courts of other states, *e.g.*, *Safeco Insurance Co. of America v. Jones*, 286 Ala. 606, 243 So.2d 736 (1970). An inconclusive but interesting analysis of the various rulings was published in 1969—Al Widiss, "A Guide To Uninsured Motorist Coverage", The W. H. Anderson Company, Cincinnati.

We noted in *State v. Wells*, 276 N.W.2d 679, 691 (N.D.1979), *cert. denied*, 442 U.S. 932, 99 S.Ct. 2865, 61 L.Ed.2d 300, that we also look to subsequent interpretations of the courts of other jurisdictions that have similar laws, not that they are controlling but, perhaps, persuasive. The most obvious result of our research of post-1971 decisions is—the "bright line" has not appeared—the reasoning is as confusing as ever. A contributing factor, of course, is the addition of the companion question of "stacking" of basic no-fault benefits under statutes with significantly different language. Until we dispose of "stacking" under our uninsured motorist law, we defer our discussion of "stacking" of basic no-fault benefits.

"Stacking" has not been described to us as being inherently wrong. We believe that judges should not invent right and wrong, but are obligated to view all questions as objectively answerable. Accordingly, we search for a logical answer to the question—did the legislature intend to prohibit "stacking" of uninsured motorist coverage? Because the legislature's practice has been to use specific language when it intended to prohibit certain insurance practices—such as unfair practices (§ 26–30–03); double insurance (§§ 26–05–06, 26–05–07, 26–05–08); or overinsurance (§§ 26–04–04, 26–03–48, 26–26–15, 26–27–15), we must assume that the legislature was aware of the possibility of "stacking" and would have stated so if prohibition of "stacking" was intended. We conclude that the legislature did not intend to prohibit "stacking" of uninsured motorist coverage.

We acknowledge that the legislature, not the judiciary, ought to make the decision and, accordingly, if we have failed in our effort to detect legislative intent in this highly specialized area of insurance, the legislature is invited to reevaluate the statute and the consequences and to clearly spell out its intent, as may be dictated by the best interest of the people of this state.

We will consider next the two 1975 enactments, § 39–08–20, NDCC, making automobile liability insurance coverage mandatory, and Chapter 26–41, NDCC, the North Dakota Auto Accident Reparations Act.

The pertinent language in § 39–08–20 is neither patently ambiguous nor directly relevant to the issue before us. It indirectly bears upon both uninsured motorist cover-

age and basic no-fault benefits in that neither is really mandatory without it. Prior to its 1981 amendment it provided:

"No person shall drive a motor vehicle in this state without a valid policy of liability insurance in effect in order to respond in damages for liability arising out of the ownership, maintenance, or use of such vehicle in the amount required by chapter 39–16.1. No statutory fee shall be assessed for a violation of this section." (Ch. 391, § 3, S.L.1981, removed the last sentence from the law.)

Because the North Dakota Auto Accident Reparations Act (Ch. 265, S.L.1975—Ch. 26–41, NDCC) is undeniably "a part of a uniform statute," we are obliged to consider the provisions of § 1–02–13, NDCC, in its interpretation. It provides:

"Any provision in this code which is a part of a uniform statute shall be so construed as to effectuate its general purpose to make uniform the law of those states which enact it."

Ordinarily, when the North Dakota Legislature enacts a uniform law, it clearly acknowledges that fact—e.g., § 30.1–01–01 (1–101). "Short title.—This title shall be known and may be cited as the Uniform Probate Code"; or § 41–01–01 (1–101) "Short title.—This title shall be known and may be cited as Uniform Commercial Code." Also, the National Conference of Commissioners on Uniform State Laws ordinarily will identify in Uniform Laws Annotated, which states have adopted various parts of specific uniform laws. No state is identified as having adopted any part of the Uniform Motor Vehicle Accident Reparations Act; 18 states[1] are listed as having "enacted so-called 'No fault' legislation." See 14 ULA Master Edition, at 47.

Unless one believes in a miraculous coincidence in choice of words or widespread plagiarism, it is difficult to escape the conclusion that North Dakota and many other jurisdictions have enacted parts of the Uniform Motor Vehicle Accident Reparations Act, and efforts ought to extend toward uniform construction.

Uniformity has not been achieved. An interesting analysis has been made by Appleman, 8 D Insurance Law and Practice, § 5192, and we quote therefrom, omitting footnotes:

"§ 5192. Stacking of Coverage

"It should be noted immediately that there is no more uniformity in the decisions dealing with the stacking of coverages in this area [no-fault benefits] than there has been in other aspects of insurance law. [A discussion of stacking of uninsured motorist coverage is found in Appleman, 8 C Insurance Law and Practice, §§ 5106, 5107 and 5108]. To take the pro-stacking decisions first, it has been held that one may recover under each such coverage irrespective of the number of policies issued. While he cannot recover the same item of damage twice, under this rule he may recover under all such policies until the total loss sustained is indemnified. And this is true though a single policy is issued. Nor did it matter that the premiums for such separate coverages were not stated separately. Of course, this does not permit a recovery in excess of the actual loss.

"Where the damages exceed a single policy limit, it has even been stated that the issue of stacking is not involved. Rather, where separate policies are involved, such a procedure may be essential to enforce contribution between insurers. And policy provisions which seek to prevent stacking have been held contrary to public policy and invalid.

"It may be timely to remind the reader that we have previously made a distinction, in our earlier discussions of multiple coverages, between those situations where several policies are issued by different insurers, and where several vehicles are insured with a single company. In the latter situation, the fact that several vehicles are insured with one compa-

---

1. As of June 30, 1980, the "no-fault" states were: Colorado, Connecticut, Florida, Georgia, Hawaii, Illinois, Kansas, Kentucky, Massachu- setts, Michigan, Minnesota, Nevada, New Jersey, New York, North Dakota, Pennsylvania, South Carolina and Utah.

ny, and a separate premium paid for each such coverage, should not lead to a multiplication of coverage any more than one would, in such instance, multiply the liability limits. Rather, it means simply that the particular coverage obtains as to the operation of that vehicle which otherwise would be uninsured. However, where there are multiple insurers, the combined coverages may exist, depending upon the policy terms, with the primary question being one of priority and loss sharing. Therefore the discussion of the various courts which lump these quite different problems into a single category is confusing and inaccurate, from a point of view of insurance law. It is recommended that a greater selectivity of judicial language be employed in the future, depending upon the circumstances presented.

"Kansas accurately pointed out that in the circumstances of multiple coverage, the policy limit which controlled was that which was upon the vehicle at the time it was operated by the insured. Because no-fault insurance is compulsory insurance, and it is important that the premiums be kept as low as possible while allowing adequate coverage, there is a public policy argument against stacking. And, under this approach, stacking is refused, at least where there is but a single insurer. This has followed though that insurer issued separate policies; indeed, one decision improperly applied the same rule where the policies were issued by different insurers. Of course, additional PIP is available if the individual is concerned about the size of the policy limits. In that event, recovery still might be limited to the additional PIP available through that policy, although Georgia permits one to consider the highest limit upon any one such car, or even that upon the colliding vehicle."

We find the most convincing argument used by the pro-"stacking" courts involves the matter of separate premiums charged when the second and third family automobile is covered. Appleman is critical of the courts that rely upon that reasoning, as noted in the above quotation and in § 5106, Volume 8 C, Insurance Law and Practice, p. 529, wherein is stated:

"... despite the confusion of some courts which seem to feel that, somehow, the insurer is deriving an unwarranted windfall, the proper rule remains that liability is not increased by the fact that a separate premium was charged for each such coverage relating to the several vehicles, or for non-owned coverage." [Footnotes omitted.]

*See also* Comments in § 5107 at 545–550. A somewhat similar criticism of pro-"stacking" decisions is reached by the writer of Comment: "Intra-Policy Stacking of Uninsured Motorist and Medical Payments Coverages: To Be Or Not To Be," 22 S.D.L. Rev. 349. Another comprehensive analysis of "Stacking of Basic Economic Loss Benefits Under The Minnesota No-Fault Automobile Insurance Act" in 5 William Mitchell L.Rev. 421 (1979), after expressing concern about the adverse impact on premiums resulting from uncontrolled "stacking," recommends that the matter be addressed by the legislature.

Considering the difference in the language describing "basic no-fault benefits" in the North Dakota statute (§ 26–41–03(2), NDCC), and that in the Uniform Motor Vehicle Accident Reparations Act [§ 1(a)(2)] and, for example, § 500.3107, Michigan Compiled Laws Annotated (West Cum.Supp.1967–1982), it becomes obvious that North Dakota's statute contains much limiting language not included in the others.

"Basic no-fault benefits," as used in the North Dakota statute, are restricted by the statement:

"The maximum amount of basic no-fault benefits payable for all economic loss incurred and resulting from accidental bodily injury to any one person as the result of any one accident shall not exceed fifteen thousand dollars, regardless of the number of persons entitled to such benefits or the number of basic no-fault insurers obligated to pay such benefits." Section 26–41–03(2), NDCC.

The argument that the placement of this statement in the definitions section is significant to the way in which it applies does not persuade us.

■ Under this definition, if Eileen Andrews had been covered by three insurers, each of whom was obligated to provide her with basic no-fault benefits, she would have clearly, nevertheless, been limited to the maximum of $15,000 of basic no-fault benefits. We construe that to be a "no stacking" statute. Pursuant to the theory espoused by Appleman and others, much less limiting words should be construed to prohibit "stacking" and, especially, where there is one insurer and one policy covering multiple vehicles.

■ Because we have concluded that our statute on uninsured motorist coverage does not prohibit "stacking," and our statute on basic no-fault benefits does prohibit "stacking," it is necessary that we determine whether the policy limitation in this case which bars "stacking" of uninsured motorist coverage is enforceable.

The policy provides in part:

"The limit of liability shown in the Declarations for 'each person' for Uninsured Motorists Coverage is our maximum limit of liability for all damages for bodily injury sustained by any one person in any one auto accident. Subject to this limit for 'each person', the limit of liability shown in the Declarations for 'each accident' for Uninsured Motorists Coverage is our maximum limit of liability for all damages for bodily injury resulting from any one auto accident.

"This is the most we will pay regardless of the number of covered persons, claims made, vehicles or premiums shown in the Declarations, or vehicles involved in the auto accident."

In the case of *Hughes v. State Farm Mut. Auto. Ins. Co.*, 236 N.W.2d 870, 885 (N.D. 1976), this court held:

"In interpreting the terms of a policy of insurance, we are guided by the familiar rule that, as an adhesion contract drawn by the company, it must be construed most strongly against the insurance company."

*See also Mills v. Agrichemical Aviation, Inc.*, 250 N.W.2d 663, 674 (N.D.1977). We have never said that insurance contracts or any other adhesion contracts should be interpreted contrary to their clear and explicit terms. We conclude that the clear policy limitation in this case violates no established public policy and is enforceable.

Some of the courts that have addressed various aspects of "stacking" have arbitrarily stated that "public policy" prohibits "stacking," while other courts have arbitrarily stated that "public policy" permits "stacking." This merely illustrates how clearly legislative the determination is and should be. Florida apparently is alone thus far in clearly settling the "stacking" dispute by legislation. Appleman recommends legislative action. We reiterate our suggestion that legislative attention is warranted.

Other questions were briefed and argued; however, as we said in *Hospital Services v. Brooks*, 229 N.W.2d 69, 71 (N.D.1975):

"Questions, the answers to which are not necessary to the determination of a case, need not be considered."

The judgment is reversed.

ERICKSTAD, C. J., SAND, J., and BERNING, District Judge, concur.

BERNING, District Judge, sitting in place of PAULSON, J., disqualified.

VANDE WALLE, Justice, concurring specially.

I reluctantly agree with the majority opinion. The trial judge relied on the statement in *St. Alexius Hospital v. Eckert*, 284 N.W.2d 441 (N.D.1979), that stacking was permitted under no-fault policies. I agree that statement was *obiter dictum* because in that instance we were concerned with a statutorily authorized coordination-of-benefits clause in a hospital-services policy with a no-fault policy while in this instance we are concerned with stacking under several no-fault policies. In *St. Alexius v. Eckert*, we construed the coordination-of-benefits

statute to prevent duplication of payments but not the allocation of losses among different insurers in those situations where the total economic loss exceeded no-fault benefits. In support of that statement we unfortunately cited *Wasche v. Milbank Mut. Ins. Co.*, 268 N.W.2d 913 (Minn.1978), which did permit stacking under no-fault policies, but we did not discuss Section 26–41–03(2), N.D.C.C.

Although this case is different from *St. Alexius Hospital v. Eckert, supra,* primarily because of Section 26–41–03(2), N.D.C.C., it nevertheless gives rise to bothersome problems. I join the majority opinion in urging that the Legislature consider these problems. Thus the limitation on stacking contained in Section 26–41–03(2), N.D.C.C., appears to be directly at odds with the legislative declaration in Section 26–41–02, N.D.C.C., that the purpose of the North Dakota Auto Accident Reparations Act is to, among other things, "avoid inadequate compensation to victims of motor vehicle accidents, ..." In this instance it is unquestioned that Eileen was not adequately compensated for her injuries. Furthermore, although the treatise by Appleman, quoted in the majority opinion, disagrees with those courts which have held that the charging of a separate premium is a basis for permitting stacking, it raises an issue which should be considered. The insurers argue that the additional premium is required because all of the cars may be on the road at the same time and involved in separate accidents for which the insurer would be responsible to the limits of the various policies. Perhaps consideration should be given to a premium based on the probabilities of such an event much like the additional premium charged in this instance because Eileen was identified as an occasional operator of one of the vehicles.

SAND, J., concur.