**REPUBLIC AIRLINES, INC., Appellant,**

v.

**STATE of North Dakota By and Through the STATE TAX COMMISSIONER, Appellee.**

**Civ. No. 10755.**

Supreme Court of North Dakota.

Dec. 19, 1984.

Pearce, Anderson & Durick, Bismarck, for appellant; argued by Harold L. Anderson, Bismarck.

Albert R. Hausauer, Asst. Atty. Gen., N.D. State Tax Dept., Bismarck, for appellee. Appearance by Carla Smith, Asst. Atty. Gen., Bismarck.

ERICKSTAD, Chief Justice.

Republic Airlines, Inc. (Republic) has filed an appeal from a district court judgment upholding the State Tax Commissioner's denial of Republic's request to receive interest on a tax refund from the State Tax Department. We reverse and remand with instructions.

It is undisputed that Republic is entitled to a tax refund resulting from operating losses incurred during 1980 and 1981 and carried back to the years 1977 and 1978. The sole issue on appeal is whether or not Republic is entitled to interest on the tax refund.

During 1979, the Legislature amended Section 57–38–35.1, N.D.C.C., by enacting House Bill No. 1058 (1979 N.D.Sess.Laws, Chapter 611), to require payment of interest on tax refunds by the tax department. The provisions of that act relevant to the issue before us state:

> "Interest of seven percent per annum shall be allowed and paid upon any over payment of tax .... If the amount of tax imposed by chapter 57–38 is reduced by reason of a carryback of a net operating loss or net capital loss, the interest in this section shall not start accruing until after the close of the taxable year in which the net operating loss or net capital loss occurred....

> \* \* \* \* \* \*

> "The provisions of this Act shall be effective for all taxable periods beginning on or after January 1, 1979."

The Tax Commissioner construed the effective date provision to preclude payment of interest on refunds resulting from losses which are carried back to taxable years prior to 1979. On that basis, the Commissioner denied Republic's request for interest on its refund. Republic asserts that the effective date provision should be construed as authorizing interest on tax refunds resulting from losses incurred subsequent to 1979 irrespective of whether or not the losses are carried back to taxable years prior to 1979.

The parties agree that under Section 57–38–35.1, N.D.C.C., interest, payable on a refund by reason of a loss carryback, begins to accrue at the close of the year in which the operating loss was incurred.

The effective date provision has the effect of requiring interest to be paid on tax refunds for "all taxable periods" subsequent to 1978. We conclude that the provision is ambiguous because it does not clearly indicate whether, in a loss carryback situation, the term "taxable periods" refers

to the year the loss is incurred or to the year in which the loss is carried back. Republic urges the former interpretation and the tax department urges the latter.

■ Generally, an agency's interpretation of ambiguous statutes regarding matters within its expertise is given some consideration by the courts in construing those provisions. *Clapp v. Cass County*, 236 N.W.2d 850 (N.D.1975); Subsection 1–02–39(6), N.D.C.C. The agency interpretation is treated with deference by the courts. *St. Alexius Hospital v. Eckert*, 284 N.W.2d 441 (N.D.1979). However, there is little inclination for us to do that in this case, because the tax department's initial position on this issue appears to have been in agreement with the position now taken by Republic and in contrast to its current position.

Prior to enactment of House Bill No. 1058, legal counsel for the tax department issued a memorandum to Representative Tish Kelly explaining the effect and fiscal impact of the bill. The memorandum referred to the effective date provision and it also provided in relevant part:

"As amended House Bill 1058 would provide:

\* \* \* \* \* \*

"2. Interest at the rate of 7% per annum would be payable on refunds of income tax resulting from over-collections, loss carrybacks or amended returns. Examples:

\* \* \* \* \* \*

"c. A loss resulting from 1979 operation and eligible for the three year carryback provisions could call for the refund of prior years taxes. But interest would start accruing on such amounts refunded from the end of the year in which the loss occurred. In this case being December 31, 1979, rather than the due date of the return for the year for which taxes are being refunded. This. would be the same treatment the taxpayer receives for federal tax purposes.

\* \* \* \* \* \*

"As for fiscal impact.

\* \* \* \* \* \*

"Interest would not start accruing on loss carryback situations until January 1, 1980. (Beginning with the end of the year in which the loss occurred, being 1979.)"

The foregoing memorandum language indicates that the tax department's initial position was that interest would be paid on refunds resulting from losses occurring during 1979 and thereafter irrespective of whether or not the losses were carried back to years prior to 1979.

■ The Tax Commissioner asserts that the following portion of the memorandum indicates that the tax department's position on this issue was the same then as it is now:

"The effective dates provide that no interest would be paid on refunds resulting from returns filed for taxable periods before January 1, 1979. Thus interest would be paid on refunds arising from 1979 and succeeding years returns only."

We disagree with the Commissioner's interpretation of the foregoing language. While the foregoing language refers to the terms "taxable periods" and "refunds arising from 1979 and succeeding years returns", it does not clarify whether the reference is to the period in which a loss has occurred or to the period in which the loss is carried back. That language is consistent with Republic's position that interest would be paid on refunds resulting from losses occurring subsequent to 1978. Thus, the provision does not demonstrate that the tax department's previous position on this matter was consistent with its current position.

The tax department asserts that because tax exemption statutes are strictly construed in favor of the government and against the taxpayer the provision we are construing which provides for interest on tax refunds should, by analogy, also be strictly construed in favor of the government. We disagree. The two provisions

are dissimilar and warrant different approaches to their interpretation.

An exemption provision results in a tax being exacted against certain persons while excluding others. According to *Sutherland Statutory Construction*, § 66.09, p. 207 (4th Ed.1974), tax exemption statutes are strictly construed in favor of the government to minimize differential treatment and to foster impartiality, fairness, and equality of treatment among taxpayers.

■ A provision which authorizes interest to be paid on tax refunds is not analogous. It applies equally to all persons who have overpaid taxes or are otherwise entitled to a tax refund by providing them a return on the monies to which they are entitled that have been held by the government. As such, the provision is remedial in nature and should be construed liberally to accomplish its objective. *See, Seablom v. Seablom*, 348 N.W.2d 920 (N.D.1984); *Falconer v. Farmers Union Oil Company*, 260 N.W.2d 1 (N.D.1977). *See also* Section 1–02–01, N.D.C.C.

■ The refund to which Republic is entitled results from tax losses occurring subsequent to the effective date of the 1979 amendments to Section 57–38–35.1, N.D.C.C. The interest which Republic seeks on the tax refund does not begin to accrue until January 1, 1981, which is also subsequent to the effective date of the amendments. In view of the rule that remedial provisions should be liberally construed to accomplish their objective, we construe the effective date provision as requiring payment of interest on tax refunds resulting from losses incurred during or after 1979 irrespective of whether or not the losses are carried back to years prior to 1979.

■ Accordingly, we hold that Republic is entitled to interest on its refund resulting from losses incurred subsequent to 1978. The judgment of the district court is reversed and the case is remanded for further proceedings in accordance with this opinion.

VANDE WALLE and GIERKE, JJ., concur.

PEDERSON, J., concurs in the result.

Justice PAUL M. SAND, who died on December 8, 1984, was a member of this Court at the time this case was submitted.