Roger WALLACE, Individually and Roger Wallace, as Special Administrator of the Estate of Donald M. Wallace, Deceased, Respondent,

v.

TRI–STATE INSURANCE COMPANY OF MINNESOTA, LUVERNE, MINNESOTA, Appellant.

No. 50874.

Supreme Court of Minnesota.

Dec. 12, 1980.

Blaufuss & Stoneberg and Arthur F. Blaufuss, Marshall, for appellant.

Prindle, Maland & Sellner and John P. Sellner, Montevideo, for respondent.

## OPINION

TODD, Justice.

Donald Wallace died from injuries sustained in an automobile accident. Donald was driving one of his father's three cars at the time of the accident and was an insured under the insurance coverage. All three vehicles were insured by Tri–State Insurance Company. Tri–State paid the no–fault limits under one policy but declined further payment on the grounds that it was entitled to coordinate benefits with a group health insurance policy which had paid virtually all of the substantial medical expenses. The trial court permitted stacking of benefits, refused coordination of benefits, and made certain allowances for funeral expenses and property damage claims. We affirm with modification.

The essential facts are not in dispute and the parties have stipulated to the following items of damage: medical expenses, $79,-703.15; funeral expenses, $2,446.12; and value of automobile, $2,575. Various items of personal property valued at $800.74 were destroyed in the collision.

Tri–State insured all three vehicles and absent the question of coordinated benefits, would be obligated to stack its benefits.

See *Wasche v. Milbank Mut. Ins. Co.,* 268 N.W.2d 913 (Minn.1978). In this case, the decedent was insured under a group health policy provided by Federated Mutual Insurance Company. Federated paid all of the medical expenses of the decedent except the sum of $514.10 with knowledge of Tri–State no–fault coverage. The record discloses that no claim has been made by Federated for coordination of benefits.

After the payment by Federated, Tri–State, without knowledge of Federated's payment, paid $19,999.10 of basic economic loss under its insurance coverage on the vehicle involved in the accident. In addition, Roger Wallace, the father of the decedent and owner of all the insured vehicles, had contracted with Tri–State for an additional $3,000 of medical payment coverage over and above the required no–fault coverage. Tri–State paid the $3,000 to its insured plus $1,250 under the funeral expense provision of the policy.

Tri–State then became aware of Federated's payment and refused any further payment. In addition, it claimed an offset of the $3,000 medical coverage payment against the collision loss on the vehicle and the remaining funeral expenses. Tri–State also declined payment for personal property on the grounds that the policy language did not cover the property involved, and if it did, its liability was limited to $200. Roger Wallace, individually and as special administrator of his deceased son, commenced this action.

The trial court permitted the stacking of benefits, refused to allow Tri–State to coordinate its benefits with those of Federated, allowed full recovery of the $3,000 medical payment, and allowed recovery of $527.59 for certain personal property. The trial court allowed recovery for the balance of the funeral expenses, but made a mathematical error in computing the amount.

The issues are:

1. Can no–fault benefits be stacked and not coordinated with group health benefits paid by another insurer who makes no claim of coordination?

2. Are excess medical coverage benefits payable where the expenses of the insured were paid by health insurance?

3. What is the proper amount of damages under the terms of the policy?

█ In *Wasche*, this court held that basic economic loss benefits may be stacked to the extent of actual injuries suffered or to the stacked policy limits when two or more policies are applicable on the same priority level. *See id.* at 919; Comment, *Stacking of Basic Economic Loss Benefits Under the Minnesota No–Fault Automobile Insurance Act*, 5 Wm. Mitchell L.Rev. 421, 424 (1979). Under the *Wasche* analysis, there are essentially two prerequisites to the stacking of basic economic loss benefits. First, the injured person must be an insured under two or more policies of no–fault insurance applicable on the same priority level as provided by Minn.Stat. § 65B.47 (1978). *See Wasche v. Milbank Mut. Ins. Co.*, 268 N.W.2d at 919. Second, the injured person must have suffered damages in excess of the limits of one policy; otherwise, stacking would be unnecessary. In this case, it is undisputed that the decedent, Donald Wallace, was an insured under all three policies of insurance and that these policies are applicable on the same priority level. Therefore, the damages sustained by Wallace satisfy the first *Wasche* requirement.

█ The second consideration involves the existence of the group health coverage. Tri–State argues that because Federated has paid all but a small portion of the medical expenses, there are no "actual losses" and any amount paid by Tri–State will result in a double recovery, contrary to the purpose of the no–fault act.[1] Tri–State's argument is faulty for two reasons. First, Tri–State ignores the language of Minn. Stat. § 65B.61, subd. 1 (1978), which states:

> Basic economic loss benefits shall be primary with respect to benefits, except for those paid or payable under a workers' compensation law, which any person

receives or is entitled to receive from any other source as a result of injury arising out of the maintenance or use of a motor vehicle.

This subdivision was amended in 1980 to add an additional exception for medicare payments. *See* Act of Apr. 11, 1980, ch. 539, § 2, 1980 Minn.Laws 700, 701. The trial court found that the intent of this section was clear and that Tri–State should not be allowed to defer its payment of benefits because of the existence of other insurance. There can be no doubt that this is the correct result. If the legislature had intended to allow Tri–State to defer its payment of benefits because of the existence of health insurance covering the same losses, it would have written such an exception into § 65B.61, subd.1.

█ Tri–State's argument also overlooks the coordination of benefits provision contained in Minn.Stat. § 65B.61, subd. 3 (1978), which states:

> Any legally constituted entity, *other than a reparation obligor* obligated to pay benefits under a plan of reparation security or an insurer or employer obligated to pay benefits under a workers' compensation law, may coordinate benefits it is obligated to pay for loss incurred as a result of injury arising out of the maintenance or use of a motor vehicle with basic economic loss benefits. (Emphasis added.)

By arguing that Federated's payment of Donald Wallace's hospital and medical expenses should excuse it from paying basic economic loss benefits, Tri–State is claiming, in effect, that it has the right to coordinate benefits if Federated chooses not to do so. Tri–State, as a reparation obligor, has no right to coordinate its benefits with Federated's. This is clear from the language of Minn.Stat. § 65B.61, subd. 3 (1978). The comments to section 11 of the Uniform Motor Vehicle Accident Reparations Act furnish additional support for this conclusion.

---

1. Tri–State also argues that a provision in *its policy* which prohibits the recovery of "duplicate benefits * * * under this or any similar insurance" prevents stacking in this case. We

held almost identical language to be void as against public policy in *Wasche v. Milbank Mut. Ins. Co.*, 268 N.W.2d at 920. That holding is applicable here.

Although the Uniform Act utilizes a different system in calculating benefits due that involves the calculation of "net loss," section 11 is designed to coordinate benefits. *See* Commissioner's Comment, 14 U.L.A. at 78. The comments to that section make it clear that only the sources listed in that section may be coordinated with no–fault benefits: "[O]nly the collateral source payments which are specified in this Section may be subtracted in calculating net loss." 14 U.L.A. at 79; *see State Auto. Mut. Ins. Co. v. Outlaw*, 575 S.W.2d 489, 494 (Ky.App. 1979) ("In determining reparation benefits, only social security and workmen's compensation benefits are deductible in calculating the claimant's net loss.") Thus, Tri–State's obligation to pay benefits is primary and it has no right to consider the benefits paid to plaintiff by Federated in determining the amount of basic economic loss suffered by plaintiff.

■■■ Tri–State also raises the question of whether the stacked no–fault benefits should be paid to plaintiff or held by Tri–State for the benefit of Federated. Tri–State argues that under Minn.Stat. § 65B.61, subd. 3, only Federated has the right to coordinate benefits and therefore that plaintiff is not entitled to the recovery of stacked no–fault benefits in this case. The trial court rejected this argument. This result is supported by this court's decision in a number of uninsured motorist insurance cases, relied on by the court in *Wasche* to support its conclusion that stacking is proper. *See Wasche v. Milbank Mut. Ins. Co.*, 268 N.W.2d at 918, n. 10. In a number of these cases, the court has stated that as between an insurer and insured, if there is to be a windfall, it should be to the insured. *See Brunmeier v. Farmers Ins. Exchange*, 296 Minn. 328, 336, 208 N.W.2d 860, 865 (1973); *Van Tassel v. Horace Mann Mut. Ins. Co.*, 296 Minn. 181, 187, 207 N.W.2d 348, 352 (1973).

This result may seem to fly in the face of one of the declared purposes of the no–fault act: "the coordination of benefits to avoid duplicate recovery." *Parr v. Cloutier*, 297 N.W.2d 138 at 141 (Minn.1980); *see* Note, *Subrogation and Indemnity Rights Under*

*the Minnesota No–Fault Automobile Insurance Act*, 4 Wm. Mitchell L.Rev. 119, 130– 31 (1978). The legislature, however, has chosen to make the coordination of benefits provision permissive rather than mandatory, *see Nyquist v. Aetna Ins. Co.*, 84 Mich. App. 589, 269 N.W.2d 687 (1978) (coordination of benefits mandatory under Michigan No–Fault Act), *aff'd*, 404 Mich. 817, 280 N.W.2d 792 (1979), and must have anticipated that some insurers would elect not to coordinate benefits. That has happened in this case.

2. Tri–State contends that pursuant to the language of its policy, its $3,000 additional medical coverage is excess coverage, applicable only when other insurance is exhausted or nonexistent. The provision on which Tri–State relies appears in the policy exclusions and states as follows:

Under the Medical Expense Coverage.

(m) *to that amount of any medical expense which is paid or payable to or on behalf of the injured person under the provisions of any* (1) *premises insurance affording benefits for medical expenses,* (2) *individual, blanket or group accident, disability or hospitalization insurance,* (3) medical, surgical, hospital or funeral service, benefit or reimbursement plan or (4) workmen's compensation or disability benefits law or any similar law; * * *. (Emphasis added.)

Tri–State argues that this policy provision makes its $3,000 medical coverage excess coverage and since Federated has already paid Donald Wallace's medical bills, with the exception of a $514.10 deductible, its obligation to pay is limited to $514.10.

The trial court apparently did not consider the applicability of the Tri–State policy provision, although it was argued in Tri–State's brief in that court. Instead, the trial court reasoned, by analogy to this court's decisions in the uninsured motorist context, that medical payments could not be used to reduce Tri–State's obligation under the no–fault act. The court cited *Van Tassel v. Horace Mann Mut. Ins. Co.*, 296 Minn.

181, 207 N.W.2d 348 (1973), in support of its conclusion.

Following the reasoning of the trial court, respondent argues that Tri–State should not be allowed to reduce its no–fault obligations by the amount of excess medical coverage. Respondent points out that the medical coverage is in addition to no–fault coverages as mandated by statute and that an additional premium was paid by plaintiff for the coverage.

Both the trial court and the respondent appear to have missed the true import of Tri–State's argument. By the terms of its policy exclusions, Tri–State's $3,000 medical insurance is excess coverage, payable if the loss is not covered by other insurance or if the loss exceeds the policy limits of the other insurance. Since Federated has paid all but $514.10 of Donald Wallace's medical expenses, Tri–State argues that as the excess carrier it should be required to pay only that amount. Seen in this light, Tri–State's argument is not that the no–fault benefits paid to plaintiff should be reduced by the $3,000 medical coverage, but that, as the excess carrier, it should have to pay only the excess benefits due–$514.10.

Formulating the argument in this light demonstrates that the *Van Tassel* case relied upon both by the trial court and by the respondent is inapplicable to these facts. In *Van Tassel*, this court held that an uninsured motorist carrier could not set off the amount of excess medical coverage contained in the same policy against the statutorily mandated uninsured motorist benefits. *See id.* at 191, 207 N.W.2d at 354. In explaining the *Van Tassel* holding, this court stated in *Pleitgen v. Farmers Ins. Exchange*, 296 Minn. 191, 207 N.W.2d 535 (1973): "[W]e held in *Van Tassel* [that] the medical–expense coverage is independent coverage which may not be used to dilute the statutorily mandated uninsured–motorist coverage." *Id.* at 195, 207 N.W.2d at 538.

 In this case, Tri–State is not seeking to reduce the statutorily required no–fault benefits. Instead, Tri–State is simply seeking the enforcement of its status as the excess insurance carrier. The Federated policy contains no conflicting other insurance clause, and therefore it is not necessary to apply the "closeness to the risk" test to determine which carrier is primarily liable on the risk. *See Auto Owners Ins. Co. v. Northstar Mut. Ins. Co.*, 281 N.W.2d 700 (Minn.1979). Under these circumstances, Tri–State's policy should be enforced as it is written.

Having determined that Tri–State is entitled to an offset of $2,485.90, we perceive no prejudice to Wallace in permitting such offset since there is no indication that he has changed his position to his detriment in reliance on the payment. Tri–State made the payment by mistake and the rule established in *Equitable Life Assurance Society of the United States v. Bachrach*, 265 Minn. 83, 120 N.W.2d 327 (1963), is extended to the facts of this case.[2]

 3. At oral argument, counsel for Wallace conceded that the policy coverage on personal property was limited to $200. We are satisfied that there were sufficient items of personal property in excess of the value of $200 which were destroyed so as to obviate the necessity of analyzing the characteristics of the various items.

Counsel for Tri–State conceded at oral argument that the trial court made a mathematical error when it awarded plaintiff $899.25 instead of $1,196.12 that was actually due for stacked funeral expense benefits. The correct amount should be inserted in the final judgment.

Affirmed with modification and remanded with instructions to enter judgment in accordance with this opinion.

---

**2.** *Equitable Life Assurance Society of the United States*, 265 Minn. 83, 120 N.W.2d 327 (1963), involved a workmen's compensation claim.

We reject Wallace's argument that the holding should be limited to workmen's compensation cases.