Robert KIEFER, Plaintiff and Appellee,

v.

GENERAL CASUALTY COMPANY OF WISCONSIN, Defendant and Appellant.

Civ. No. 11038.

Supreme Court of North Dakota.

Jan. 30, 1986.

2. Solen does not contend that it did not know that the meeting was going to be reconvened on October 2.

Lyle H. Moe (argued), Grand Forks, N.D., for plaintiff and appellee.

O'Grady, Morley & Morley, Grand Forks, N.D., for defendant and appellant; argued by Michael J. Morley.

MESCHKE, Justice.

We hold that no-fault auto insurance is not required to duplicate payment of medical expenses where they have been separately paid by health insurance "coordinated" with the no-fault policy. Accordingly, we reverse the trial court's decision requiring duplication of payment.

On July 16, 1983, Robert Kiefer, while he was a passenger in an uninsured vehicle, was seriously injured in a single car accident. He was unable to work until May 21, 1984, and had substantial medical and hospital bills. Kiefer claimed benefits under his own automobile insurance policy issued by General Casualty Insurance Company of Wisconsin, which included North Dakota no-fault personal injury protection benefits, as well as uninsured motorist coverage.

Kiefer collected the $25,000 uninsured motorist benefit from General Casualty. General Casualty paid $6,600 to Kiefer for weekly wage loss benefits under its no-fault coverage and paid the first $5,000 of Kiefer's medical expenses as required by Blue Cross-Blue Shield, Kiefer's health insurer, pursuant to the coordination of benefits provision of the North Dakota Auto Accident Reparations Act, § 26–41–10(3), N.D.C.C.[1] It also paid $405.53 of medical expense items and deductibles which were not covered by Blue Cross-Blue Shield. Thus, General Casualty paid $12,005.53 of no-fault benefits to Kiefer. Kiefer's remaining medical expenses (which totaled over $27,000) were paid by Blue Cross-Blue Shield.

Relying on the fact that his medical expenses exceeded his no-fault limits of $15,000, Kiefer demanded payment of the $2,994.47 balance of his no-fault limits.

General Casualty declined to pay because Kiefer had "not incurred appropriate economic loss" where Blue Cross-Blue Shield had paid. This lawsuit followed.

The trial court held that a no-fault insurer must pay its insured for economic losses even if they have been paid by separate insurance benefitting the insured. The trial court felt that the Blue Cross-Blue Shield requirement that the no-fault insurer pay the first $5,000 of medical expenses was the only coordination of benefits allowed between those separate policies of insurance under § 26–41–10(3) of the North Dakota Auto Accident Reparations Act:

"'3. An insurer, health maintenance organization, or nonprofit service corporation, *other than a basic no-fault insurer,* authorized to do business in this state *may coordinate any benefits it is obligated to pay for economic loss incurred as a result of accidental bodily injury, with the first five thousand dollars of basic no-fault benefits.* An insurer, health maintenance organization, or nonprofit service corporation may not coordinate benefits unless it provides those persons who purchase benefits from it with an equitable reduction or savings in the direct or indirect cost of purchased benefits. A coordination of benefits plan shall be approved by the commissioner of insurance.'" (Emphasis by the trial court).

Emphasizing expressions of this Court in *St. Alexius Hospital v. Eckert,* 284 N.W.2d 441 (N.D.1979), General Casualty argues against allowing "double recovery or duplication of benefits." It points out that no-fault insurance is designed to protect against *"economic loss* because of accidental bodily injury arising out of the operation of a motor vehicle," (our emphasis) § 26–41–10(1), N.D.C.C., and argues that there is no "economic loss" to the extent that another insurer pays medical ex-

---

1. As a part of a reorganization and revision of Title 26, Insurance, in 1985, the Auto Accident Reparations Act is now found at Chapter 26.1–41. S.L.1985, ch. 316. Former section 26–41– 10 has been renumbered and is now 26.1–41–13. All statutory citations in the text are as they existed prior to July 1, 1985.

penses. General Casualty stresses that its policy contains a provision on "non-duplication of benefits":

"No eligible injured person shall recover duplicate benefits for the same elements of loss under this or any similar insurance, including approved plans of self-insurance."

Kiefer argues that his medical expenses were far in excess of his no-fault coverage so that he is entitled to payment of the remaining no-fault coverage, without regard to payments by his health insurer. He urges that the "collateral source" rule applies, precluding General Casualty from benefitting from another insurance policy, separately obtained by the insured. Kiefer claims that the North Dakota Auto Accident Reparations Act permits reduction of no-fault benefits only for benefits received from workmen's compensation, § 26–41–10(1), N.D.C.C., and excludes "a basic no-fault insurer" from the provision allowing limited coordination of benefits between insurers. § 26–41–10(3), N.D.C.C. Kiefer relies upon the holding of *Wallace v. Tri-State Insurance Company*, 302 N.W.2d 337 (Minn.1980).

In *Wallace*, the Minnesota Supreme Court considered a comparable situation where medical expenses, which exceeded no-fault benefits, were nearly all paid under a health policy for the insured. The Minnesota Supreme Court held that the no-fault insurer could not "defer its payment of benefits because of the existence of health insurance covering the same losses," 302 N.W.2d at 339, because it was not allowed by Minnesota's no-fault insurance act. Further, considering a section similar to subsection 3 of § 26–41–10 of our Act, the Minnesota Supreme Court reasoned that a no-fault insurer "has no right to

coordinate its benefits" with a health insurer.

The Minnesota "coordination of benefits" subsection authorized coordination of benefits only by insurers "other than a reparation obligor" (no-fault insurer). Our North Dakota subsection similarly authorizes coordination of benefits only by insurers "other than a basic no-fault insurer." The statutory similarity suggests similarity in statutory construction leading to a result like *Wallace* in our state.

■ However, in *Wallace*, the Minnesota Supreme Court recognized that the health insurer had not coordinated its benefits with the no-fault insurer, although statutorily permitted to do so. Here, Kiefer's health insurer did require coordination of benefits as authorized by statute and General Casualty did pay the first $5,000 of Kiefer's medical expenses as required by that coordination. The differences, in the actual coordination implemented in this case and in the extent of coordination of benefits authorized by our statute, certainly create a different setting for statutory construction than in *Wallace*.[2] Thus, *Wallace* is not persuasive precedent for determining how to "coordinate any benefits ... for economic loss incurred as a result of accidental bodily injuries" under our statute. Rather, it appears to us that the corollary of having paid what is required by the statutorily permitted coordination is that General Casualty should not have to also pay what the coordinating insurer cannot require it to pay.

■ Kiefer's reliance on the "collateral source" doctrine is misplaced. The "collateral source" rule has been shaped to avoid advantage to wrongdoers from insurance policies and other resources of those they injure.[3] *See Keller v. Gama*, 378 N.W.2d

---

**2.** Statutory provisions as to coordination of other benefits with no-fault insurances vary widely. *See, e.g., O'Donnell v. State Farm Mutual Auto Insurance, Co.*, 404 Mich. 524, 273 N.W.2d 829 (1979). *See also, Uniform Motor Vehicle Accident Reparations Act*, 14 U.L.A. 41 (1980).

**3.** *See generally*, 22 Am.Jur.2d, *Damages*, §§ 206–207 (1965). *See also*, Anno: *Collateral Source*

*Rule: Injured Person's Hospitalization or Medical Insurance As Affecting Damages Recoverable,* 77 A.L.R.3d 415, 420 (1977): "... [T]he collateral source rule lies between two systems for the compensation of accident victims: the traditional court tort recovery based on fault and the increasingly prevalent coverage based on no-fault insurance. Neither system possesses such universality of coverage or completeness of

867 (N.D.1985). Allocation of losses for the same casualty between separate insurance policies of the insured involves different considerations and is largely a contract matter conforming with applicable statutes.

There is an important consideration for avoiding a statutory reading which would require double payment of benefits for the same economic loss covered by a no-fault policy and a coordinated insurance policy: the cost of no-fault insurance to the insured. Costs of insurances are as important as benefits. Overlapping coverages can cause higher costs of procuring insurances. This consideration may appear to be modest, if we look only at the amounts involved in this case. But, the potential for long-run savings in the cost of no-fault insurance that can result from fair coordination of contracted coverages is a relevant factor. *See, Auto Club Insurance Association v. Frederick and Herrud, Inc.*, 145 Mich.App. 722, 377 N.W.2d 902 (1985). Since no-fault insurance is mandatory for all motor vehicles in North Dakota,[4] its cost should not be unnecessarily increased. "Otherwise, the poor and the disadvantaged people of the state might not be able to obtain the necessary insurance." *O'Donnell v. State Farm Mutual Auto Insurance*, 404 Mich. 524, 273 N.W.2d 829, 836 (1979).

 Our decision is consistent with *St. Alexius v. Eckert, supra*, where this court held that, in enacting mandatory no-fault insurance, the Legislature "intended to coordinate benefits in order to prevent double recovery of benefits—not to prevent an insured from allocating his economic losses among his insurers." 284 N.W.2d at 446. The insured remains free to allocate his losses among his different insurers as his circumstances make desirable, where his total economic losses may or do exceed no-fault benefits. General Casualty carefully carried out Kiefer's directions in this case, and the balance of the coverage remains available to apply on any recurrent losses arising from Kiefer's injuries not otherwise paid by his health insurance. But, duplication of payments by both insurers for the same economic loss of medical expenses is not commanded by our statute.

Therefore, we hold that a no-fault insurer is not required to duplicate payment of benefits for medical expenses, where they have been paid by coordinated health insurance as authorized by the statute.

Accordingly, we reverse.

ERICKSTAD, C.J., and LEVINE, VANDE WALLE, GIERKE, JJ., concur.

compensation that one can easily dispense with the collateral source rule's approach to meshing the two systems."

4. N.D.C.C. § 26–41–04(1), now § 26.1–41–02(1). *See* footnote 1, *supra*.