**NORTHLAND INSURANCE COMPANY, Respondent,**

v.

**ACE DORAN HAULING & RIGGING COMPANY, Appellant.**

**No. C0-87-927.**

Court of Appeals of Minnesota.

Nov. 10, 1987.

Garfield P. Hoerschgren, Cochrane & Bresnahan, St. Paul, for respondent.

Jon A. Hanson, Tony R. Krall, Hanson, Noel & Lulic, Minneapolis, Milton D. Price, Stillwater, for appellant.

Heard, considered and decided by
SEDGWICK, P.J., and PARKER and
HUSPENI, JJ.

**OPINION**

PARKER, Judge.

This action arose out of nondelivery of a shipment of 90 bales of cotton to be moved from a warehouse in Fabens, Texas, to Houston. The truck driver, William Davison, was found by the trial court to be an agent-employee of Ace Doran Hauling & Rigging Company.

The shipper, Southwestern Irrigated Cotton Growers (S.W.I.G.), had hired Wa Ho Truck Brokerage of Phoenix, Arizona (Wa Ho), to contract for the movement of the cotton from pickup to point of destination.

Northland Insurance Company insured Wa Ho and made payment under its policy to S.W.I.G. on behalf of Wa Ho, claiming subrogation to S.W.I.G.'s rights against the non-delivering carrier, Ace Doran.

Northland sued Ace Doran and the matter came to trial. The trial court issued findings of fact, conclusions of law and an order for judgment concluding that Northland had paid monies as a volunteer and therefore was not entitled to recover by way of its subrogation claim against Ace Doran.

Northland moved the court to amend and supplement its findings, conclusions and order. The trial court granted the motion, reversing its earlier decision, and concluded that Northland had *not* paid as a volunteer and was therefore entitled to pursue its subrogation claim.

The trial court then allowed Ace Doran to present additional evidence, solely on the issue of defenses available to a carrier/bailee, on nondelivery of goods in the hands of a carrier.

A further evidentiary hearing was held and the trial court issued its amended findings, conclusions and order holding that Northland had not paid as a volunteer and was subrogated to the rights of S.W.I.G. Ace appeals from that judgment. We affirm.

**FACTS**

S.W.I.G. contacted Wa Ho to arrange for the transportation of 90 bales of cotton from Fabens, Texas, to Houston. The shipment was wholly intrastate. Wa Ho contacted William Davison, who owned the truck-trailer, to transport the cotton; he receipted for the goods under appropriate bills of lading and loading receipts. Davison leased his equipment to Ace Doran, an I.C.C. carrier.

The cotton was destroyed en route by fire and, when it did not arrive in Houston, S.W.I.G. contacted Wa Ho, which then submitted a claim to Northland for indemnification. Clarence Slaight was the insurance adjuster who investigated the claim for Northland.

Slaight never saw the place where the truck burned. His investigation was conducted by telephone interviews. He testified, "By the time I heard about it they buried it." No evidence was allowed regarding the cause of the fire or any negligence related to it, because it was ruled hearsay. No one disputed the nondelivery; however, Ace Doran challenged the investigation and the amount of loss. Using government classifications, Slaight determined that the amount of the loss was $43,082.59.

Wa Ho was coinsured by two companies, Northland and Lloyds of London. Northland paid Wa Ho $20,000 in settlement and Lloyds paid another $20,000, according to the testimony of David Haggerty, recovery supervisor for Northland. It was Northland's contention that Lloyds had assigned its rights to them, based on the allegation that it was "accepted procedure in the industry." Therefore, Northland sought the whole amount, $43,000, claiming it was subrogated to the rights of S.W.I.G.

Halfway through the trial, Ace Doran moved to limit Northland's claim to $20,000 absent any proof other than the adjuster's testimony that it was authorized to act for Lloyds. The trial court granted the motion.

At trial the major testimony examined two relationships, each involving Ace Doran.

One relationship was between Davison, the shipper and Ace Doran. Davison could not be located and did not testify at trial. Norman Wegman, compliance director for Ace Doran, testified and characterized Davison as an independent contractor responsible for the maintenance of his equipment, licenses, permits, fuel and other expenditures. Wegman further claimed that Ace Doran was responsible for Davison only when he was hauling freight under Ace Doran's bill of lading. He claimed that Ace Doran had no intrastate authority within the state of Texas; it was not Ace Doran's practice to haul cotton; and that Ace Doran had no knowledge of this contract of carriage prior to the loss.

Wegman also testified that Ace Doran was responsible for Davison's actions only when he was hauling freight on Ace Doran's freight bills. The freight bills for this transaction actually said "Wa Ho Ace Doran."

The second relationship examined was the dual role of John Gutmacher, the owner of Wa Ho Brokerage. Gutmacher claimed to be both a truck broker and an agent for Ace Doran, though he had no formal document evidencing such an arrangement. Gutmacher neither owns nor leases any trucks himself. Instead, his job as broker is to connect shippers with truck companies to haul freight. He claimed he had made many such trip arrangements for Ace Doran to ship cotton.

## ISSUES

1. Did Northland prove the elements of its case?

2. Was Davison an agent-employee of Ace Doran and therefore liable for nondelivery of the cotton?

3. Was Northland acting as a volunteer when paying this claim and therefore not subrogated to the rights of S.W.I.G.?

## DISCUSSION

A trial court's findings of fact are not normally set aside, except when there is no credible evidence to support them. Findings of fact made by the trial court will not be set aside unless clearly erroneous, with due regard given to the opportunity of the trial court to judge the credibility of the witnesses. The findings may be held clearly erroneous if the reviewing court is left with the definite and firm conviction that a mistake has been made. However, when the critical evidence is documentary, there is no necessity to defer to the trial court's assessment of the meaning and credibility of the evidence. *In re Trust Known as Great Northern Iron Ore Properties*, 308 Minn. 221, 225–26, 243 N.W.2d 302, 305 (1976), *cert. denied*, 429 U.S. 1001, 97 S.Ct. 530, 50 L.Ed.2d 612 (1976).

### I

The trial court found that because the agreement between Wa Ho and Davison "was to be performed wholly within the state of Texas, and was so contemplated by the parties, Texas law is therefore applicable to the dispute herein." This application of law is not an issue on appeal.

Ace Doran argues that in order to establish a claim against it, Northland must prove that (1) the cotton bales were tendered in good condition to Ace Doran, and (2) the cotton was destroyed or damaged during shipment. *Mountain Boneless Beef Co. v. Curtis, Inc.*, 42 Colo.App. 367, 593 P.2d 1381 (1979). However, according to the law of bailments, the correct analysis is that a simple showing of non-delivery, along with damages, is all that is required. Unexcused non-delivery makes the bailee liable for the goods. The law is even more stringent regarding the liability of carriers for the loss of or damage to goods. *Rogers v. Crespi & Co.*, 259 S.W.2d 928 (Tex.Civ.App.1953).

Ace Doran objected to admission of bills of lading offered to show that the goods were tendered and to prove damages, on the grounds that they were copies and therefore not the best evidence. Minn.R. Evid. 1003 states:

A duplicate is admissible to the same extent as an original unless (1) a genuine

issue is raised as to the authencity of the original or (2) in the circumstances it would be unfair to admit the duplicate in lieu of the original.

■ Because the issue of the documents' authenticity was not raised and no attempt made to prove that delivery had actually occurred, it is not unfair to admit the duplicates in lieu of the originals. Ace Doran also objected to the bills as "incomplete" because only one side of the document had been copied, yet there was no indication that any of the conditions listed on the front *or* the omitted side were at issue.

■ Finally, Ace Doran also objected to the bills as lacking foundation regarding Davison's signature. Foundation for evidence in a court-tried case is a matter particularly in the trial court's sound discretion. The evidence showed that Davison had a sign on the side of his truck which identified him as the owner. He was also known to the people on the premises at Wa Ho, because he had arranged for the transportation of goods on previous occasions; they accepted the signature on the bill of lading as his.

## II

Ace Doran also objected to the testimony of insurance adjuster Slaight, claiming that he had no personal knowledge of the event because he based his information on statements or publications of third parties. His investigation was conducted, of necessity, by telephone because the cotton was already buried by the time he was notified. Slaight submitted that his methods for determining damages were standard for the industry, explaining that he made a

> calculation of the claim using the United States Department of Agricultural classification and micronaire on each bale, which would give me the average price of the cotton sitting inside the warehouse in Fabens, Texas. Then added to that the cost of getting the cotton out of the warehouse and onto a truck to arrive at F.O.B. truck, Fabens, Texas, price, average price. I multiplied by licensed and

bonded wares weights and arrived at a value of that cotton of $43,082.59.

To arrive at that figure he used computer runs of the bale number; the gross weight of each bale; the tare, that's the weight of the bagging and the ties that holds that cotton together; the net weight, which is the gross weight less the tare; the micronaire of each bale of cotton; and USDA classification of that bale.

He testified that the nature of cotton is distinct from most commodities because each bale can be individually identified until consumed by the mill:

> [If] I was in France; I could tell you what farm almost a bale of cotton was grown on. Therefore, when the cotton is shipped and ordered shipped out, there is individual warehouse receipts that apply for each bale of cotton * * *.

Slaight explained that the shipper must then send these warehouse receipts, wrapped around with a shipping order and the bill of lading designating the truck broker, in order to ship the cotton.

■ Ace Doran argued that the government document used to calculate these damages contained nested hearsay. However, this document is a business record kept in the ordinary course of government business which many expert witnesses use without hesitation and is, much like the consumer price index, accepted as reliable. Therefore, this document is admissible.

■ Slaight offered impressive credentials to support his investigative methods. He testified that he had been adjusting property claims for over 35 years and that in 1966 he was a general adjuster in charge of all cotton losses in the United States, including those involving the federal government. This court believes that reliance on hearsay is the nature of an adjuster's job. The adjuster checks the information against his own experience and knowledge of the market. We hold that his testimony was admissible under Minn. R.Evid. 703:

> The facts or data in the particular case upon which an expert bases an opinion or

inference may be those perceived by or made known to him at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, *the facts or data need not be admissible in evidence.*

(Emphasis added).

### III

■ Ace Doran claims that Davison was an independent contractor and therefore Ace Doran is not responsible for any damage that may have been caused by or is attributable to Davison. Davison was responsible for the maintenance of his equipment, licenses, permits, fuel, etc. Ace Doran claims that Wa Ho is the principal and Davison the agent.

The applicable Texas statute provides: No commercial motor vehicle nor any truck-tractor shall be operated over any public highway of this state by any person other than the registered owner thereof, or his agent, servant or employee under the supervision, direction, and control of such registered owner unless such other person under whose supervision, direction and control said motor vehicle or truck-trailer is operated shall have caused to be filed with the Department an executed copy of the lease, memorandum or agreement under which such commercial motor vehicle or truck-trailer is being operated.

Vernon's Ann.Civ.St. art. 6701c–1, § 2 (1979).

An application of this statute can be found in *Greyhound Van Lines, Inc. v. Bellamy*, 502 S.W.2d 586 (Tex.Civ.App. 1973). Bellamy was injured by the negligence of the driver of a truck which was under lease to Greyhound. Greyhound argued that the driver was not an employee but an independent contractor. The court affirmed Greyhound's liability and held:

[A]rticle 6701c–1 was obviously enacted to eliminate any uncertainty that might otherwise exist as to who is responsible for wrongs inflicted upon the public at large through the operation on our state highways by lessees of the vehicles

named in the statute. Independent of any other rule, it prohibits Greyhound under our record from now asserting that Otterson was not under its full and complete control and supervision at all pertinent times.

*Id.* at 588.

Similarly, a case which had the same type of agency issue stated:

Holcomb [driver] operated the truck under an oral lease to Barry [carrier]. Texas law requires that any lease of a commercial motor vehicle vest full and complete control and supervision of the operation of the vehicle in the lessee. Tex. Civ.Stat.Ann. art. 6701c–1 sec. 4 (1969). If the parties do not so provide, courts will imply it in the contract as a matter of law. * * * Texas law could not be plainer that the *'independent contractor' defense is not available for commercial motor vehicles in these circumstances.*

*Ridgway v. Gulf Life Insurance Company*, 578 F.2d 1026, 1029 (5th Cir.1978) (emphasis added).

Ace Doran's lease states that "[t]he equipment will be deemed to be leased only when being used in the transportation of property under carrier's manifest or under specific dispatch by carrier." Wegman testified there was no contract of carriage, manifest or bill of lading issued by Ace Doran, and Ace Doran did not know of the shipment until after the loss. The bills of lading say, "Wa Ho Ace Doran." Ace Doran argues that there is no such entity; it is apparent that the heading was used simply for reference and convenience of recordkeeping.

Ace Doran cloaked its drivers with apparent authority. Davison had a placard on the side of his truck with Ace Doran's name and I.C.C. number; therefore, Davison was both Ace Doran's agent and employee, capable of entering into a contract with Wa Ho on behalf of Ace Doran.

### IV

Ace Doran claims that Northland acted as a volunteer when paying this claim be-

cause the policy did not cover the loss; therefore, it cannot be subrogated to the rights of S.W.I.G.

■ Subrogation allows an entity which pays a loss or satisfies the claim of another entity, for which it is under a legally cognizable obligation, to substitute itself for that other entity and assert its rights. *Stafford Metal Works, Inc. v. Cook Paint & Varnish Co.*, 418 F.Supp. 56, 58 (N.D. Tex.1976).

■ If the liability is not clear and the insurance company acts *in good faith* to pay the loss, even the fact that the loss was not covered does not necessarily make the insurance company a volunteer.

> Thus, while an insurance company that pays a loss for which it is not liable has been held a mere volunteer, not entitled to subrogation, an insurer who acts in good faith to discharge a disputed obligation does not become a mere volunteer if it is ultimately determined that its policy did not apply.

73 Am.Jur.2d, *Subrogation* § 25, at 615.

In *Employers Mutual Liability Insurance of Wisconsin v. Pacific Indemnity Co.*, 167 Cal.App.2d 369, 334 P.2d 658 (1959), the plaintiff insurance company paid on a claim that the defendant insurance company should have paid. The court rejected the claim that plaintiff's payment was voluntary, basing its holding on the issue of *reasonable doubt:*

> Where, as here, a reasonable doubt exists as to his own liability to a third party, a person making a payment for that party which should have been made by a second party, cannot as to such payment be considered a volunteer or interloper.

*Id.* 334 P.2d at 664.

Texas courts have given this interpretation to subrogation:

> The courts of Texas have been peculiarly hospitable to the right of subrogation and have been in the forefront in upholding the right to it.

*Yonack v. Interstate Securities Company of Texas*, 217 F.2d 649, 651 (5th Cir.1954).

Whether Northland acted as a volunteer in paying this claim depends on the interpretation of the contract language. Initially the trial court held that Northland was a volunteer. It then changed its conclusion on that issue and found that Northland was not a volunteer. The policy read:

> **1. COVERAGE**—It is the purpose of this insurance to indemnify the Insured for their legal liability only to the amount which they are obligated to pay and do pay on such merchandise by reason of losses caused as herein defined. This insurance covers only while the property described is in the custody of the Insured, and only while contained in or on the following described motor truck or trailer and/or motor trucks or trailers owned and operated by the Insured; however, privilege is hereby granted the Insured to substitute at any time during the currency of the policy, other motor truck or trailer and/or motor trucks or trailers than described herein, provided such substituted motor truck or trailer and/or motor trucks or trailers are owned and operated by the Insured. It is agreed that written notice of all such substitutions will be mailed to the Insurance Company prior to known or reported loss and to pay additional premium if required.
>
> **2. DESCRIPTION OF MOTOR TRUCKS and/or TRAILERS**
>
> | TRADE NAME | YEAR BUILT | FACTORY OR MOTOR NO. | TYPE OF BODY | TONNAGE | AMOUNT OF INSURANCE ON CARGO PER TRUCK OR TRAILER | RATE |
> |---|---|---|---|---|---|---|
> | Waived | | | | | $30,000. part of 60,000. | per C.U.-30 |

The portion of the form providing for description of motor trucks and/or trailers contained the word "waived."

■ The precise issue revolves around the effect of the word "waived." "Waived" may refer to any of three provisions: (1) the granting of coverage itself (although this does not appear likely); (2) the requirement that the goods be in the custody of Wa Ho; and/or (3) that the goods be in certain vehicles which are described in the policy. In its first ruling the trial court held that only the third provision was waived; however, it later decided that

reasonable minds could differ regarding the coverage afforded. Therefore, relying on the "good faith" and "reasonable doubt" issues raised in *Employees Mutual,* the trial court reversed its ruling, deciding that custody could also be waived. Because Wa Ho, as broker, does not own or operate vehicles or ever take custody of goods, Ace Doran's interpretation would render the policy a nullity.

Ace Doran suggests that Northland should have waited for Wa Ho to be sued by S.W.I.G. before paying. However, the testimony indicates that it is the custom in the brokerage business that if brokered goods are damaged, the broker is primarily liable to the shipper and that, upon payment to the shipper, the broker is subrogated to the rights of the shipper against the carrier.

> One should have the right to settle a lawsuit in which there is reasonable doubt concerning liability and not be required to incur all of the expenses of litigation to conclusion before being entitled to seek subrogation. To hold otherwise would be to discourage settlements and to promote litigation, a concept which should be discouraged by the courts. We believe it is not inappropriate to hold that one who is sued for alleged negligence and who, in an effort to save his property, including the expenditure of attorney's fees, enters into a reasonable settlement is not a volunteer and is entitled to seek reimbursement under the doctrine of equitable subrogation.

*Rawson v. City of Omaha,* 212 Neb. 159, 322 N.W.2d 381, 385 (1982).

Had Northland waited for a suit to be commenced, it would have been subject to a bad-faith claim based on wrongful denial of coverage. We hold the trial court's interpretation to be a permissible inference from the language and form of the document.

### DECISION

Davison was an agent-employee of Ace Doran which was, therefore, liable for nondelivery of the cotton. The elements of nondelivery and damages are sufficiently established. Northland was not acting as a volunteer when paying this claim and is therefore subrogated to the rights of S.W. I.G.

Affirmed.