Brian HOILAND for Amanda
HOILAND, a minor,
Respondent,

v.

MINNEAPOLIS CHILDREN'S MEDI-
CAL CENTER, Appellant (C4–89–2183),
Respondent (C1–89–2237),

State Farm Automobile Insurance Com-
pany, et al., Defendants (C4–89–2183),
Respondents (C1–89–2237),

Blue Cross and Blue Shield of
Minnesota, Appellant
(C1–89–2237).

Nos. C4–89–2183, C1–89–2237.

Court of Appeals of Minnesota.

June 12, 1990.

Review Denied Aug. 23, 1990.

Allan J. Zlimen, Stewart & Zlimen, Minneapolis, for Minneapolis Children's Medical Center.

Kenneth R. White, Farrish, Johnson and Machka, Mankato, for State Farm Auto. Ins. Co., et al.

Eric J. Magnuson, Louise A. Dovre, Rider, Bennett, Egan and Arundel, Minneapolis, Robert J. Milis, Blue Cross and Blue Shield of Minnesota, St. Paul, for Blue Cross and Blue Shield of Minnesota.

Hubert H. Humphrey, III, Atty. Gen., Sharon A. Lewis, Sp. Asst. Atty. Gen., St. Paul, for amicus Atty. Gen. for State of Minn.

Sharon L. VanDyck, Schwebel, Goetz & Sieben, Minneapolis, for amicus Minnesota Trial Lawyers Ass'n.

Considered and decided by GARDEBRING, P.J., and FOLEY and MULALLY *, JJ.

## OPINION

EDWARD D. MULALLY, Judge.

The trial court in this declaratory judgment action determined that no-fault benefits should be placed in trust for the benefit of Amanda Hoiland. Appellant Blue Cross and Blue Shield's request for reimbursement of benefits it paid was denied. The trial court also denied appellant Minneapolis Children's Medical Center's request that it receive the no-fault benefits. We reverse.

## FACTS

On June 27, 1988, respondent Amanda Hoiland, then eight months old, suffered serious injuries as a result of a traffic accident. Amanda suffered brain damage and was rendered quadriplegic. She received immediate treatment in Rice County and was transported to Minneapolis Children's Medical Center (Minneapolis Children's) on the date of the accident.

After Amanda had been in Minneapolis Children's for nine days, a Minneapolis

Harry A. Sieben, Jr., Susan Holden, Sieben, Grose, Von Holtum, McCoy and Carey, Minneapolis, for respondent.

* Acting as judge of the Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 2.

Children's employee met with Amanda's father, respondent Brian Hoiland, to request insurance information. As well as requesting this information, the employee also explained what resources in addition to insurance might be available to the Hoilands. After meeting with the Minneapolis Children's employee, Brian Hoiland signed the general admission registration. Brian Hoiland also signed an assignment for direct payment, which stated:

I hereby assign payment for health care services otherwise payable to me, pursuant to a policy of insurance or other health care source or plan for services rendered or to be rendered to the above patient be paid directly to MINNEAPOLIS CHILDREN'S MEDICAL CENTER, INC. in an amount not exceeding MINNEAPOLIS CHILDREN'S MEDICAL CENTER, INC.'S regular charges for such services.

State Farm Automobile Insurance Company insured the car in which Amanda was a passenger at the time of the accident. Pursuant to its policy, State Farm made one payment. State Farm then determined that the entire $50,000 limits of its policy would be required for Amanda's injuries. State Farm issued a check for the remainder of its policy limits payable to Brian Hoiland and Minneapolis Children's.

Amanda was also covered as a dependent under her mother's health insurance plan administered by Blue Cross & Blue Shield of Minnesota (BCBS). The BCBS policy contained the following exclusion:

The certificate does not cover: * * *

(21) treatment of any illness which is eligible under any no-fault automobile insurance policy to the extent that the no-fault policy covers services eligible under the group AWARE Gold contract.

When Minneapolis Children's discovered that State Farm provided no-fault coverage, Minneapolis Children's sought to recover the no-fault payments pursuant to the assignment of benefits agreement. BCBS, upon becoming aware of the State Farm coverage, sought to recoup approximately $50,000 it had paid Minneapolis Children's.

Brian Hoiland brought a declaratory judgment action, seeking a determination from the trial court that the State Farm policy's proceeds should be paid to him in trust for Amanda to cover medical expenses not covered by other insurance. Minneapolis Children's and BCBS opposed this. State Farm sought leave to deposit the insurance proceeds into court and to be dismissed from the action. This request was granted. The trial court granted Brian Hoiland's motion. BCBS and Minneapolis Children's brought separate appeals, which have been consolidated. This court granted the requests of the Attorney General of Minnesota and the Minnesota Trial Lawyers Association for leave to file amicus briefs.

## ISSUES

1. Did the trial court err in directing payment of the State Farm funds to Brian Hoiland, rather than to Minneapolis Children's?

2. Did the trial court err in not permitting BCBS to recoup payments made to Minneapolis Children's?

## ANALYSIS

### I.

■■■ Hoiland argues the assignment of benefits clause should not be enforced because it is a contract of adhesion.

By definition, an adhesion contract is drafted unilaterally by a business enterprise and forced upon an unwilling and often unknowing public for services that cannot readily be obtained elsewhere. It is a contract generally not bargained for, but which is imposed on the public for *necessary* service on a "take it or leave it" basis. Even though a contract is on a printed form and offered on a "take it or leave it" basis, those facts alone do not cause it to be an adhesion contract. There must be a showing that the parties were greatly disparate in bargaining power, that there was no opportunity for negotiation *and* that the services could not be obtained elsewhere.

*Schlobohm v. Spa Petite, Inc.,* 326 N.W.2d 920, 924–25 (Minn.1982) (emphasis in original) (citations omitted). Medical treatment is considered an essential service. *Id.* at 925.

In the trial court, Minneapolis Children's presented a copy of its administrative policy regarding the assignment. The policy requires that both the admissions and the assignment be signed. However, the policy goes on to state,

> [w]e do require signatures on both lines. However, some parents refused to sign the assignment for direct payment. We then write "refused" on that line and initial it as a witness to their refusal.

Hoiland contends that it is unlikely that parents will understand that they have a right to refuse to execute the assignment. However, in the trial court he made no showing of a lack of opportunity to negotiate. Hospital policy permits a refusal to execute the assignment. There was uncontroverted evidence that a child will not be refused treatment if the child's parent refuses.

The assignment was on a printed form; however, it does not appear it was presented on a "take it or leave it" basis, since hospital policy allows parents to refuse. There was also no showing that there was no opportunity for negotiation. Under these circumstances, the assignment of payments was not an unenforceable adhesion contract.

## II.

■ In the case of injury caused by a motor vehicle accident, no-fault insurance is primary to any other insurance. Minn. Stat. § 65B.61, subd. 1 (1988). The no-fault carrier's obligation to pay basic economic loss benefits is primary regardless of the existence of health insurance. *See Wallace v. Tri–State Insurance Co.,* 302 N.W.2d 337, 340 (Minn.1980).

■ In the present case, State Farm, the no-fault carrier, provided the primary source of basic economic loss benefits. BCBS, unaware of the existence of the State Farm coverage, paid the basic economic loss benefits. This payment by BCBS was made in error. BCBS should

not be penalized for promptly, albeit erroneously, paying what it believed it owed. *See Minnesota Mutual Fire & Casualty Co. v. Rudzinski,* 347 N.W.2d 848, 851 (Minn.App.1984), *pet. for rev. denied* (Minn. Dec. 20, 1984).

Amicus MTLA contends that the purpose of Section 65B.51, subd. 1 is to prevent a double recovery by an insured. This is one of the stated purposes of the No–Fault Act; however, "the general rationale of the act [is] that economic loss should primarily be the burden of the no-fault carrier." *Haugen v. Town of Waltham,* 292 N.W.2d 737, 740 (Minn.1980). MTLA's argument is that since there will be no double recovery, the trial court's decision to make the State Farm policy secondary should be affirmed. The legislature, however, has determined that the no-fault carrier, in this case State Farm, is to be the primary carrier for basic economic loss benefits.

### DECISION

The assignment of payments is not an unenforceable adhesion contract. Because State Farm was the primary insurer, BCBS is entitled to recoup payments it made.

Reversed.