*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-0986**

State Farm Mutual Automobile Insurance Company, judgment creditor,
Respondent/Co-Appellant,

vs.

Justin Beauchane,
Judgment Debtor,

and

North Star Mutual Insurance Company, garnishee,
Respondent,

United Fire and Casualty Company, garnishee,
Appellant.

**Filed April 6, 2015
Affirmed
Ross, Judge**

Red Lake County District Court
File No. 63-CV-11-30

James P. Young, Young Law Office, Bloomington, Minnesota (for respondent State Farm Mutual Automobile Insurance Company)

Matthew W. Moehrle, Eric S. Oelrich, Rajkowski Hansmeier Ltd., St. Cloud, Minnesota (for respondent North Star Mutual Insurance Company)

Stephen M. Warner, Beth A. Jenson Prouty, Arthur, Chapman, Kettering, Smetak & Pikala, P.A., Minneapolis, Minnesota (for appellant United Fire and Casualty Company)

Considered and decided by Ross, Presiding Judge; Kirk, Judge; and Reilly, Judge.

**ROSS**, Judge

This insurance-coverage case arose after Justin Beauchane left his insured pickup truck in the middle of the street tied to a tree that he wanted to pull down, and a motorcyclist who swerved to miss the rope struck Beauchane's uninsured Chevy Blazer, which Beauchane had just moved out of the tree's path. The motorcyclist's insurer paid the motorcyclist $45,000 and brought a subrogation claim against Beauchane. Beauchane stipulated to judgment against him but his two insurers denied coverage, leaving the three insurance companies—one insuring the motorcycle, one insuring the pickup, and one insuring Beauchane's home—playing hot potato with the coverage obligation. The district court interpreted the insurance contracts and held that Beauchane's auto insurer has the obligation. We construe the contracts similarly and affirm.

### FACTS

One Sunday morning in June 2007, Justin Beauchane prepared to remove a dead tree from the edge of his Red Lake Falls property. He tied a rope around the tree about 25 feet up. He positioned his 1993 Chevrolet Silverado about four feet from the curb in the street bordering his lot. And he tied the rope's other end to the truck's trailer hitch, angling the rope from the truck up into the tree. Beauchane activated the truck's hazard lights and left it in the middle of the street. He went to his 1984 Chevrolet Blazer in the driveway and began moving it toward the street and out of the tree's fall path.

At about that time, Joshua Sandness was riding his motorcycle on the same street. He traveled on a course that would take him between Beauchane's pickup and the curb

2

and into the rope. Beauchane was in the Blazer moving it down the driveway toward the street when he noticed the motorcycle. He immediately realized it was headed for the rope. Beauchane stopped the Blazer at the mouth of the driveway and tried to alert the motorcyclist. Sandness swerved to duck under the rope, lost control of the motorcycle, veered toward the Blazer, and hit the Blazer's front bumper and then the ground. Sandness came to rest in Beauchane's yard with the motorcycle on top of him. The crash injured his leg and required surgery.

Beauchane's home insurer (North Star Mutual Insurance Company) and his auto insurer for the Silverado (United Fire & Casualty Company) both refused to cover Sandness's injuries. Sandness had been riding his father's motorcycle, which was insured by State Farm Mutual Automobile Insurance Company. No one insured the Blazer. Sandness settled with State Farm for $45,000. State Farm brought this subrogation action against Beauchane sounding in negligence. Beauchane tendered his defense to his insurers, and they both denied coverage.

Beauchane and State Farm entered into a *Miller-Shugart* settlement agreement. Beauchane agreed to judgment against him and State Farm agreed to seek recovery only against Beauchane's insurers. United Fire and North Star continued to deny coverage.

The district court entered judgment against Beauchane based on the *Miller-Shugart* agreement, and all three insurance companies brought motions for summary judgment to determine which of the insurers held the duty to cover. The district court granted State Farm's motion in part, deciding that United Fire's policy covered

3

Sandness's injuries. It granted North Star's motion, holding that the homeowner policy did not cover the mishap. United Fire and State Farm separately appeal.

**D E C I S I O N**

United Fire asks us to reverse the summary-judgment decision based on three principal arguments. It argues that its auto policy does not cover Sandness's injuries because the injuries did not arise from the "use" of an insured vehicle, as that term is defined by caselaw. It also maintains that State Farm failed to mention the insured vehicle in its negligence claim against Beauchane and that this precludes coverage. And it argues that, if its policy does cover Sandness's injuries, State Farm's payment to Sandness was merely a voluntary payment rather than payment to a genuinely "uninsured" motorist, preventing subrogation. In addition to disputing these arguments, State Farm maintains that the injuries are covered under Beauchane's homeowner policy with North Star. These coverage arguments on appeal present legal and contract-interpretation questions, which we review de novo. *Star Windshield Repair, Inc. v. W. Nat'l Ins. Co.*, 768 N.W.2d 346, 348 (Minn. 2009). We address each argument in turn.

**I**

United Fire argues that Sandness's injuries are not covered under its vehicle liability policy. The United Fire policy covered Beauchane "for the ownership, maintenance or use of" the Silverado. We apply a three-question test to decide whether an injury arose from the use of a vehicle. *Cont'l W. Ins. Co. v. Klug*, 415 N.W.2d 876, 878 (Minn. 1987). To hold that the injuries resulted from the use of the insured vehicle, the vehicle must be an "active accessory" to the injury, there must not be any "act of

4

independent significance" defeating causation, and the injury must result from use of the vehicle "for transportation purposes." *Id.*

### The Silverado was an "active accessory" to Sandness's injury.

We answer the first question—whether the Silverado was an "active accessory" to Sandness's injury—in favor of United Fire's duty to cover. Whether a motor vehicle is an "active accessory" causing injury requires a showing "less than proximate cause . . . [but] more than the vehicle being the mere situs of the injury." *Id.* (quotation omitted). The requirement is met if "the injury is a natural and reasonable incident or consequence of the use of the vehicle." *Tlougan v. Auto-Owners Ins. Co.*, 310 N.W.2d 116, 117 (Minn. 1981) (quotation omitted). Applying this standard, we have held that the vehicle need not "actively *cause*" the injury; it is sufficient if it is "actively *connected* with the injury." *Ill. Farmers Ins. Co. v. Marvin*, 707 N.W.2d 747, 752–53 (Minn. App. 2006).

On this standard, we reject United Fire's contention that because Sandness did not collide with the Silverado, the Silverado was not an active accessory to Sandness's injuries. A vehicle can be an active accessory to injury even if its mere positioning creates the injury-causing hazard. *See, e.g., Haagenson v. Nat'l Farmers Union Prop. & Cas. Co.*, 277 N.W.2d 648 (Minn. 1979) (holding that the plaintiff's injury arose from the use of a parked vehicle when the plaintiff slipped while entering and fell into a power line). The Silverado's positioning obstructed Sandness's course in traffic, misleading Sandness to suppose he had a clear route between the Silverado and the curb. After Sandness made the commitment to that route and the rope suddenly became evident, he had only four options, all bad. He could attempt to veer most radically to the left of the

5

truck and into the face of potentially oncoming traffic; he could veer less radically to the left directly into the Silverado; he could continue onward into the rope; or he could swerve to the right and try to duck the rope. Because the Silverado's positioning with its rope by itself required Sandness to attempt the immediate, injury-resulting course correction, we hold that the Silverado was "actively connected" to Sandness's injury. This is our conclusion regardless of whether the Silverado and the rope constituted two interdependent hazards or a single conjoined hazard.

We are not persuaded otherwise by United Fire's contention that the only hazards were the rope and the Blazer and that the same injury would have occurred if the rope had been tied to something other than the Silverado. The rope *wasn't* tied to something other than the Silverado, and if the Silverado had not been positioned in the street, Sandness would not have needed to drive to its right along the curb and toward the rope.

*No "act of independent significance" broke the causal link.*

We answer the next question—whether an act of independent significance broke the causal link between the Silverado's use and Sandness's injury—also in favor of United Fire's coverage. An act of independent significance separating the vehicle's use and the claimed injuries defeats coverage. *Klug*, 415 N.W.2d at 878. United Fire argues that Beauchane's placing a rope across the road was an act of independent significance. It argues alternatively that the Blazer was an intervening cause. Both arguments fail.

The record indicates that Beauchane created a single hazard by connecting the rope to the Silverado and the tree. His placement of the tethered truck constituted the hazard; placing and tethering the truck are how he used the truck. We therefore reject

United Fire's contention that Beauchane's placing the rope across the road was independent. The Blazer was stopped and off, essentially parked in the driveway, when Sandness's motorcycle hit it. It was the thing collided with, not the collision's cause. One can reasonably foresee that forcing a motorcyclist off the road could result in his colliding with off-road objects and sustaining injuries like those that Sandness suffered. *See Lennon v. Pieper*, 411 N.W.2d 225, 228 (Minn. App. 1987) ("If injury is foreseeable, then the party is liable for any injury proximately resulting from it, even though he could not have anticipated the particular injury which did happen."). And even if Beauchane was negligent in operating the Blazer, negligent acts are not independently significant. *Marvin*, 707 N.W.2d at 756. We hold that no act of independent significance broke the causal link between the Silverado's use and Sandness's injury.

### *Sandness's injuries resulted from use of the Silverado "for transportation purposes."*

We similarly answer the third question—whether Sandness's injuries resulted from use of the Silverado "for transportation purposes"—in favor of United Fire's coverage obligation. This is because the phrase, "for transportation purposes," carries a broader meaning than is suggested by its literal terms. The requirement arises from a statute that defines "maintenance or use of a motor vehicle" as "maintenance or use of a motor vehicle *as a vehicle*." Minn. Stat. § 65B.43, subd. 3 (2014) (emphasis added). The phrase does not describe merely driving things or people from place to place; it also specifically includes even occupying, entering, and exiting a vehicle. *Id.*

United Fire argues that Beauchane was using the truck only to anchor the rope, not to drag the tree. *See Waldbillig v. State Farm Mut. Auto. Ins. Co.*, 321 N.W.2d 49, 50, 53

7

(Minn. 1982) (holding that an injury caused by a device mounted to the back of a truck was not an injury arising from a transportation purpose). But Beauchane told the United Fire investigator, "[F]or the angle that I needed to pull the tree down the vehicle was parked in the street." Under this evidence, the rope tethered to the truck was the means "to pull the tree down." Preparing to use a vehicle to move items can constitute use for transportation purposes, even if the vehicle is parked when the injury occurs. *See, e.g., Kern v. Auto Owners Ins. Co.*, 526 N.W.2d 409, 412 (Minn. App. 1995) (holding that truck was used for transportation when newly purchased material was blown from the truck while it was parked); *Kemmerer v. State Farm Ins. Cos.*, 513 N.W.2d 838, 843 (Minn. App. 1994) (holding that use for transportation purposes occurred when a rope that secured a kayak to a parked truck snapped, causing injury), *review denied* (Minn. June 2, 1994) ; *see also Norwest Bank Minn., N.A. v. State Farm Mut. Auto. Ins. Co.*, 588 N.W.2d 743, 747 (Minn. 1999) (holding that a transportation purpose existed when a couple died from exhaust fumes emanating from the car they parked in their garage and neglected to turn off). Because Beauchane positioned the tethered truck preparing "to pull the tree down," we hold that Sandness's injuries arose from use of the truck for a transportation purpose.

## II

United Fire offers an alternative argument against coverage. It argues that the *Miller-Shugart* settlement agreement is unenforceable because State Farm's negligence complaint, from which the settlement arose, did not specify any vehicle covered by United Fire's motor-vehicle policy. It contends that without initial notice that the

Silverado was involved, it cannot be bound by the settlement between State Farm and Beauchane. The argument does not persuade us.

United Fire points to the elements triggering an insurer's duty to defend, recognizing that liability insurers generally owe both a duty to defend and to indemnify their insureds and that the duty to defend is generally broader than the duty to indemnify. *See St. Paul Fire & Marine Ins. Co. v. Nat'l Chiropractic Mut. Ins. Co.*, 496 N.W.2d 411, 415 (Minn. App. 1993), *review denied* (Minn. April 29, 1993). The complaint allegations ordinarily trigger the insurer's duty to defend. *Remodeling Dimensions, Inc. v. Integrity Mut. Ins. Co.*, 819 N.W.2d 602, 616 (Minn. 2012). An insurer must provide a defense if any part of the action against its insured is arguably within the scope of coverage. *Johnson v. AID Ins. Co. of Des Moines, Iowa.*, 287 N.W.2d 663, 665 (Minn. 1980). But information outside the complaint can also establish a duty to defend, so an insurer cannot assume that its duty to defend extends only to the allegations a third party includes in the complaint. *Iowa Nat'l Mut. Ins. Co. v. Universal Underwriters Ins. Co.*, 276 Minn. 362, 370, 150 N.W.2d 233, 238 (1967), *overruled on other grounds by Cargill, Inc. v. Ace Am. Ins. Co.*, 784 N.W.2d 341 (Minn. 2010). United Fire knew long before the *Miller-Shugart* agreement that the Silverado played a role in the collision. And not only has United Fire identified no basis for any prejudice to it resulting from the complaint's lack of reference to the Silverado, its counsel reasonably acknowledged at oral argument that it would have made the same arguments it has made in this litigation even if the Silverado had been specifically identified sooner. Although United Fire is correct that

earlier specific notice should have occurred, the delay in notice here is no ground for us to reverse.

## III

United Fire contends that if its vehicle policy covers Sandness's injuries, Beauchane cannot be an "uninsured motorist." It reasons that State Farm's erroneous payment to Sandness as a supposed uninsured motorist was therefore merely a voluntary payment, and voluntary payments do not trigger subrogation. *See First Nat'l Bank of St. Paul v. McHasco Elec., Inc.*, 273 Minn. 407, 414, 141 N.W.2d 491, 496 (1966) (observing that a lender is subrogated to another party's rights if the lender advanced its loan to satisfy a prior commitment).

United Fire's argument overlooks the fact that coverage here was previously denied or at least reasonably uncertain. An insurer's duty to pay uninsured motorist benefits may be triggered by a liability insurer's coverage denial. *See Fryer v. Nat'l Union Fire Ins. Co.*, 365 N.W.2d 249, 253 (Minn. 1985). In *Fryer*, the supreme court noted that policy language defined an uninsured motor vehicle as "one for which the liability insurer 'denies coverage,'" and it held that "so long as the denial exists, the motor vehicle is deemed to be uninsured." *Id.* United Fire denied coverage here, and Sandness's affidavit confirms that it did so before State Farm paid Sandness. Because the record does not include State Farm's policy definitions (including the definition of uninsured vehicle), we cannot determine whether State Farm properly determined that the Silverado is an uninsured motor vehicle under its policy. But as we have previously explained, "[i]f the liability is not clear and the insurance company acts *in good faith* to

10

pay the loss, even the fact that the loss was not covered does not necessarily make the insurance company a volunteer." *Northland Ins. Co. v. Ace Doran Hauling & Rigging Co.*, 415 N.W.2d 33, 39 (Minn. App. 1987). On that ground we have refused to penalize an insurer for "promptly, albeit erroneously, paying what it believed it owed" when the insurer was unaware whether another insurer was obligated to extend primary coverage. *Hoiland ex. rel. Hoiland v. Minneapolis Children's Med. Ctr.*, 457 N.W.2d 241, 244 (Minn. App. 1990), *review denied* (Minn. Aug. 23, 1990). For all of these reasons, we do not fault the district court for refusing to treat State Farm's payment as voluntary. We therefore need not consider United Fire's argument that a voluntary payment would defeat State Farm's subrogation right.

## IV

State Farm argues that North Star's homeowner's policy may alternatively cover Sandness's injuries. Our decision to affirm the district court as to United Fire's coverage obligation resolves the appeal. We add that State Farm's argument fails on the plain language of the North Star policy. North Star's policy excludes coverage for injuries resulting from "the ownership, operation, maintenance, [or] use . . . of [Beauchane's] 'motorized vehicles'," and the exclusion applies "regardless of other causes or 'occurrences' that contribute to or aggravate" the injury. Because we have concluded that Sandness's injuries arose from Beauchane's use of his Silverado, we also hold that North Star's exclusion generally applies. And although a homeowner policy may still cover injuries involving a vehicle if "two independent acts, one vehicle-related and one nonvehicle-related, were involved," *Waseca Mut. Ins. Co. v. Noska*, 331 N.W.2d 917,

11

921 (Minn. 1983), the exception does not apply here. The exception applies when the collision's causes "*could have* operated independent of a motor vehicle to cause the loss." *State Farm Ins. Cos. v. Seefeld*, 481 N.W.2d 62, 65 (Minn. 1992). It does not apply where, as here, there exists only a remote possibility that the injuries could have occurred without a vehicle involved. Here, the middle-of-the-road placement of the tethered vehicle was the negligent act causing the collision and Sandness's injuries.

**Affirmed.**